**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN LU, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>SINA CORPORATION, CHARLES GUOWEI CHAO, BONNIE YI ZHANG, HONG DU, QINGXU DENG, BIN ZHENG, TER FUNG TSAO, YAN WANG, SONG-YI ZHANG, YICHEN ZHANG, JAMES JIANZHANG LIANG, MORGAN STANLEY & CO. LLC, and MORGAN STANLEY ASIA LIMITED,<br><br>     Defendants. | Case No.:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR A JURY TRIAL |

Plaintiff Kevin Lu ("Plaintiff"), by and through its counsel, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of public statements issued by Sina Corporation ("Sina" or the "Company"), Sina's filings with the U.S. Securities and Exchange Commission ("SEC"), and other publicly available information, including information disclosed through the Section 238 shareholder appraisal action related to the Merger captioned *In the Matter of the Companies Act (2021 Revision); In the Matter of Sina Corp.,* Cause No. FSD 128 of 2021 (RPJ) (Grand Court, F.S.D., Cayman Islands) (the "Section 238 Proceeding").

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a Class of all persons and entities that sold Sina ordinary shares, including those that sold into the Merger (defined below) and were

damaged thereby, between October 13, 2020 and March 22, 2021, inclusive (the "Class Period"). Excluded from the Class are Defendants (defined below), members of the immediate family of Individual Defendants (defined below), any subsidiary or affiliate of Sina, and the directors and officers of Sina and their families and affiliates at all relevant times, and any Sina ordinary shares for which a petition was filed or for which appraisal rights were exercised and pursued pursuant to Cayman Law.

2.       This action concerns a scheme by Defendants to depress the value of Sina ordinary shares in order to avoid paying a fair price to Sina's shareholders in connection with a transaction to take the Company private, in violation of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. Defendants executed this scheme by failing to provide shareholders with adequate disclosure of all material information related to the Merger and making false assurances about the fair value of the Company's ordinary shares. As a result, Sina shareholders were misled into accepting consideration for the Merger that was well below fair value for their Sina ordinary shares.

3.       Based in Beijing, China, and incorporated in 1997 under the laws of the Cayman Islands, Sina is a media technology company that provides region-specific news, information, entertainment, and financial content.

4.       In 2018, Sina made a strategic investment of $90 million in TuSimple Holdings, Inc. ("TuSimple"), an autonomous trucking company based in San Diego, California that was not publicly traded at that time. Prior to TuSimple's initial public offering ("IPO") on or about April 15, 2021,[1] Sina held a substantial stake of approximately 34 percent of TuSimple's ordinary shares.

---

[1] Pursuant to TuSimple's IPO, 33,783,783 shares of TuSimple Class A common stock were offered at a price of $40.00 per share.

However, Sina shareholders were unaware of the Company's investment in TuSimple, and in particular, the value of the investment.

5.    Indeed, on April 30, 2019, Sina only vaguely referenced in the Company's 2019 Annual Report on Form 20-F, filed with the SEC, acquisition of preference shares in a "private company, which primarily focuses on artificial intelligence of automobile."

6.    On September 28, 2020, Sina and Defendant Chao, through his majority-owned companies New Wave MMXV Limited ("New Wave"), New Wave Holdings Limited ("New Wave Holdings" or "Parent"), and New Wave Mergersub Limited ("Merger Sub," and collectively with Defendant Chao, New Wave, and New Wave Holdings, the "Buyer Group"), entered into an agreement and plan of merger (the "Merger").[2]   Pursuant to the Merger agreement, the Buyer Group would acquire all outstanding Sina ordinary shares in an all-cash transaction valued at $43.30 per ordinary share (the "Proposed Transaction").   The Proposed Transaction implied an equity value of the Company between "book value" and approximately $1.2 billion. The actual value of TuSimple, during this period, however, was far in excess of anything Sina was telling the market. As set forth below, just as the Defendants' vague references to TuSimple equated to a valuation of $1.2 billion, in actuality, TuSimple was raising money at a valuation of $2.2 to $2.5 billion, ***almost double what TuSimple was valued at for purposes of the Merger***, and preparing for an IPO valuing the Company at $7 billion.

7.    Prior to the shareholder vote, Defendants issued a Preliminary Proxy Statement ("Preliminary Proxy") on October 13, 2020, an Amended Proxy Statement on November 9, 2020 ("First Amended Proxy"), and Amended Proxy Statement on November 20, 2020 ("Second

---

[2] Mr. Chao is the sole director of New Wave.  Both Parent and Merger Sub were formed for the purposes of completing the Merger. Ms. B. Zhang became an owner of New Wave shortly after the Merger.

Amended Proxy"), an Amended Proxy Statement on December 8, 2020 (" Third Amended Proxy")
(together, the "Proxy"), and a Final Amended Proxy Statement on March 22, 2021, all filed with
the SEC on Schedule 13E-3 in connection with the Merger.

8.      Between September 28, 2020, and December 8, 2020, to convince Sina
shareholders to vote in favor of the Merger, Defendants authorized the filing of materially false
and misleading Proxy statements that failed to provide all material information related to the
Merger, in violation of the Exchange Act.  Specifically, the Proxy statements contained materially
false and misleading statements and omissions as they failed to provide shareholders with the true
value of Sina's investment in TuSimple. No information was provided to the market concerning
fundraising that was ongoing at the time of the Merger nor the anticipated valuation for TuSimple,
which was known during the relevant time period, but omitted from the core transaction
documents.

9.      The Merger was authorized and approved by a shareholder vote on December 23,
2020 during an extraordinary general meeting (the "EGM") and became effective on March 22,
2021.

10.     As a result of Defendants' decision to conceal this material information,
shareholders unknowingly sold Sina ordinary shares at substantially deflated values during the
Class Period as a part of the scheme.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange
Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17
C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  During the Class Period, Sina's ordinary shares were listed and traded on the NASDAQ, located within this District.  In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities markets.

## PARTIES

14.     Plaintiff Kevin Lu sold Sina ordinary shares during the Class Period, as set forth in the accompanying certification, incorporated by reference herein, and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Sina is incorporated under the laws of the Cayman Islands with its principal executive offices located in Beijing, People's Republic of China.  Sina's ordinary shares traded on the Nasdaq Global Select Market under the ticker symbol "SINA."

16.     Defendant Charles Guowei Chao ("Chao"), at all relevant times, was Sina's Chief Executive Officer ("CEO") and Chairman of the Board of Directors as well as a member of TuSimple's Board of Directors.  At the time of the Merger, Defendant Chao owned 14.7% of Sina's ordinary shares. However, Defendant Chao controlled over 50% of Sina's votes through preferred shares that were issued to his entity, New Wave, in 2017, for USD$7,150 in the wake of a proxy contest.

17.     Defendant Bonnie Yi Zhang ("B. Zhang"), at all relevant times, was the Company's CFO and member of TuSimple's Board of Directors. At some point after the Merger, Defendant B. Zhang received ownership in New Wave.

18.    Defendant Hong Du ("Du"), at all relevant times, was the Company's President and Chief Operating Officer.

19.    Defendant Qingxu Deng ("Deng"), at all relevant times, was the Company's Senior Vice President of Operation.

20.    Defendant Bin Zheng ("Zheng"), at all relevant times, was the Company's Senior Vice President of Human Resources.

21.    Defendant Ter Fung Tsao ("Tsao"), at all relevant times, was a member of the Company's Board of Directors.

22.    Defendant Yan Wang ("Wang"), at all relevant times, was a member of the Company's Board of Directors.  Wang was a member of the independent director committee that considered the Merger (the "Special Committee").

23.    Defendant Song-Yi Zhang ("S. Zhang"), at all relevant times, was a member of the Company's Board of Directors.  S. Zhang was a member of the Special Committee.

24.    Defendant Yichen Zhang ("Y. Zhang"), at all relevant times, was a member of the Company's Board of Directors.  Y. Zhang was a member of the Special Committee and served as its Chairperson.

25.    Defendant James Jianzhang Liang ("Liang"), at all relevant times, was a member of the Company's Board of Directors.

26.    Defendants Chao, B. Zhang, Du, Deng, Zheng, Tsao, Wang, S. Zhang, Y. Zhang, Y. Zhang, and Liang (together, the "Individual Defendants"), because of their positions with Sina, possessed the power and authority to control the contents of, *inter alia*, Sina's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of

Sina's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

27.     Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for Tu Simple's IPO. Morgan Stanley is headquartered in New York, New York.

28.     Morgan Stanley Asia Limited. ("Morgan Stanley Asia," and together with Morgan Stanley, the "Morgan Stanley Defendants") served as financial advisor to the Special Committee for the Merger. Morgan Stanley is headquartered in New York, New York.

29.     Sina, the Individual Defendants, and the Morgan Stanley Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

30.     As an internet media company, Sina provides region-specific news, information, entertainment, and financial content in China.

31.     In 2018, Sina invested $90 million into TuSimple Holdings, Inc. ("TuSimple"), which was a private company at the time. Based in San Diego, California, TuSimple is an autonomous trucking company. When TuSimple initiated its initial public offering on or about April 15, 2021, Sina held a substantial stake of approximately 34 percent of TuSimple's ordinary shares.

32.    However, Sina shareholders were largely unaware of the value of the Company's investment in TuSimple. On April 30, 2019, the TuSimple investment was only vaguely referenced in the Company's 2019 Annual Report on Form 20-F, which recorded that Sina had acquired preference shares in a "private company, which primarily focuses on artificial intelligence of automobile."

33.    On September 28, 2020, Sina issued a press release entitled "Sina Enters into Definitive Agreement for 'Going Private' Transaction," announcing the Proposed Transaction. The press release stated in relevant part:

> Pursuant to the Merger Agreement, at the effective time of the Merger (the "Effective Time"), each Ordinary Share issued and outstanding immediately prior to the Effective Time will be cancelled and cease to exist in exchange for the right to receive US$43.30 in cash per Ordinary Share without interest (the "Per Share Merger Consideration" and in the aggregate, the "Merger Consideration"), other than (a) shares held by the Chairman, New Wave and any of their respective affiliates, which will be rolled over in the transaction, (b) shares held by the Company or any subsidiary of the Company or held in the Company's treasury, which will be cancelled and cease to exist without payment of any consideration, and (c) shares held by shareholders who have validly exercised and not effectively withdrawn or lost their rights to dissent from the Merger pursuant to Section 238 of the Companies Law of the Cayman Islands, which will be cancelled and cease to exist in exchange for the right to receive the payment of fair value of those dissenting shares in accordance with Section 238 of the Companies Law of the Cayman Islands.
>
> The Per Share Merger Consideration represents a premium of approximately 18.1% to the closing price of the Company's Ordinary Shares on July 2, 2020, the last trading day prior to the Company's announcement of its receipt of the preliminary non-binding "going-private" proposal from New Wave on July 6, 2020, and premiums of approximately 23.6% and 28.6% to the volume-weighted average traded price of the Company's Ordinary Shares during the last one month and three months, respectively, prior to and including July 2, 2020.

34.    During the extraordinary general meeting to vote on the transaction (the "EGM") held on December 23, 2020, the Merger was authorized and approved by shareholders.  Thereafter, the Merger closed on March 22, 2021.

## **Defendants' Materially False and Misleading Statements**

35.    On October 13, 2020, Sina filed a Schedule 13E-3 containing the Preliminary Proxy Statement with the SEC in connection with the Merger.  Defendants Chao and B. Zhang signed the Preliminary Proxy Statement.  According to the Fairness Presentation included in the Proxy, Morgan Stanley Asia valued TuSimple using "book value" as the low-end and $1.2 billion as the high-end valuation, which the Fairness Deck states was the "most recent market value . . . [b]ased on reported last round valuation."   The "reported last round valuation" cited in the Fairness Presentation was TuSimple's Series D financing round completed in September 2019.

36.    The Preliminary Proxy Statement described the following factors, among others, that purportedly supported the recommendation that Sina shareholders vote in favor of the Merger and that the Merger was fair to Sina shareholders:

SPECIAL FACTORS
* * *
Reasons for the Merger and Recommendation of the Special Committee and the Board
* * *

- the Special Committee's and the Board's knowledge of the Company's business, financial condition, results of operations, prospects and competitive position and their respective belief ***that the Merger is financially more favorable to the Unaffiliated Security Holders than any other alternative reasonably available to the Company and the Unaffiliated Security Holders***;

* * *

- the current and historical market prices of the Ordinary Shares, and ***the fact that the Per Share Merger Consideration of US$43.30 offered to the Unaffiliated Security Holders representing a premium of approximately 18.1% to the closing price of the Ordinary Shares on July 2, 2020***, the last trading day prior to the Company's announcement of its receipt of the preliminary non-

9

binding "going-private" proposal from New Wave on July 6, 2020, and premiums of approximately 23.6% and 28.6% to the volume-weighted average traded price of the Ordinary Shares during the last one month and three months, respectively, prior to and including July 2, 2020;

* * *

- **the financial analysis reviewed by Morgan Stanley with the Special Committee, as well as the oral opinion of Morgan Stanley rendered to the Special Committee on September 28, 2020** (which was subsequently confirmed in writing by delivery of Morgan Stanley's written opinion, dated September 28, 2020, to the Special Committee), **as to the fairness, from a financial point of view, of the Per Share Merger Consideration to be received by holders of Ordinary Shares (other than the Buyer Group),** as of the date thereof, based upon and subject to the procedures followed, assumptions made, qualifications and limitations on the review undertaken and other matters considered by Morgan Stanley in preparing its opinion (See "Special Factors—Opinion of the Special Committee's Financial Advisor" beginning on page 37 for additional information).

* * *

37.    The Preliminary Proxy Statement further stated the Board, on behalf of Sina, considered, among other things, the factors described above and "expressly adopted" the determination that the Merger was "fair, and in the best interests of," Sina and its shareholders, stating:

SPECIAL FACTORS

* * *

Reasons for the Merger and Recommendation of the Special Committee and the Board

* * *

*In reaching its determination that the Merger Agreement, the Plan of Merger and the Transactions, including the Merger, are fair to, and in the best interests of, the Company and the Unaffiliated Security Holders* and its decision to authorize and approve the Merger Agreement, the Plan of Merger and the Transactions, including the Merger, and recommend the authorization and approval of the Merger Agreement, the Plan of Merger and the Transactions, including the Merger, by the Company's shareholders, the Board, on behalf of the Company, *considered the analysis and factors described above under this section and under "Special*

*Factors—Background of the Merger" and expressly adopted such determination, recommendation and analysis*.

38.     The First Amended Proxy Statement filed on November 9, 2020, the Second Amended Proxy Statement filed on November 20, 2020, the Third Amended Proxy Statement filed on December 8, 2020, and the Final Amended Proxy Statement filed on March 22, 2021, all filed with the SEC on Schedule 13E-3 and signed by Defendant Chao, included substantially similar language as to the fairness of the Merger as described in ¶¶ 35-37.

39.     The statements identified in ¶¶ 35-38 contained within Sina's Proxy materials misrepresented and/or omitted material information that was necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Merger. Specifically, Defendants failed to disclose that: (1) Defendants concealed the true value of the Company's investment in TuSimple at the time of the Merger; (2) in turn, the offer of $43.30 per ordinary share as consideration for the Merger substantially shortchanged the true value of Sina ordinary shares; (3) as a result, Defendants' statements about Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## DEFENDANTS' FRAUD COMES TO LIGHT

40.     Contrary to Defendants' repeated assurances as to the fairness of the Merger for Sina shareholders, Defendants' fraudulent scheme was revealed during the Section 238 Proceeding.  During discovery, dissenting shareholders obtained documents that revealed for the first time that Defendants knowingly concealed the true value of Sina's investment in TuSimple at the time of the Merger.

41.     Defendants' decision to conceal this material information allowed them to grossly shortchange the true value of Sina ordinary shares, to the detriment of shareholders who

unknowingly sold Sina ordinary shares at substantially deflated values during the Class Period as a part of the scheme.

42.    The Section 238 Proceedings disclosed that prior to the EGM, TuSimple was completing a Series E fundraising round at a significantly higher valuation. The Series E fundraising round valued TuSimple pre-money at $2.2 billion and post-money over $2.5 billion – ***approximately double the high-end valuation of TuSimple relied on by Morgan Stanley to value TuSimple for purposes of the Merger.***

43.    The Section 238 Proceedings also disclosed that TuSimple was much further along in its efforts to conduct an IPO than what was publicly disclosed. TuSimple's IPO was completed approximately one month after the closing of the Merger.

44.    Two sets of projections were produced by TuSimple to value the company in anticipation of its IPO: one set dated December 16, 2020, and the other was dated January 23, 2021.

45.    The numbers in the January 23, 2021 projections were available in December 2020. Cabrillo Advisors, a financial advisor hired to determine the fair value of TuSimple's common stock as of December 31, 2020 for tax reporting purposes, was provided with these cash flows for its report. Similar projections were contained in a spreadsheet that includes comments from December 10 and 13, 2020 about these projections.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that sold Sina ordinary shares, including those who sold into the Merger, between October 13, 2020 and March 22, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the

Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and any Sina ordinary shares for which a petition was filed or for which appraisal rights were exercised and pursued pursuant to Cayman Law.

47.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, ordinary shares of Sina actively traded on the NASDAQ under the ticker symbol "SINA."  Millions of Sina shares were traded publicly during the Class Period on the NASDAQ.  As of December 31, 2019, the Company had more than 68 million ordinary shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Sina or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests that conflict with those of the Class.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a)     whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)     whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Sina;

d)     whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Sina;

e)     whether the market price of Sina ordinary shares during the Class Period were artificially deflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## ADDITIONAL SCIENTER ALLEGATIONS

52.    During the Class Period, as alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

53.    The Defendants permitted Sina to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially affected the value of the Company's ordinary shares.

54.    As set forth herein, Defendants, by virtue of their receipt of information reflecting the true facts regarding Sina, their control over, receipt, and/or modification of Sina's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Sina, participated in the fraudulent scheme alleged herein.

55.    The Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on sellers of Sina ordinary shares by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding Sina's business, operations, and management and the intrinsic value of Sina ordinary shares and caused Plaintiff and members of the Class to sell Sina ordinary shares at artificially deflated prices.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

56.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Sina who knew that the statement was false when made.

## LOSS CAUSATION

57.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially deflated the price of Sina's ordinary shares and operated a fraud or deceit on Class members by failing to disclose and misrepresenting the facts detailed herein.  This course of conduct misled the Class members and caused them, in reliance on the misrepresentations and on the market price of Sina's ordinary shares during the Class Period, to sell their shares at a depressed price.  As a result of their sale of Sina ordinary shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

58.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material fact which there was a duty to disclose.

59.     Plaintiff is also entitled to rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's stock traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's ordinary shares; and

(e) Plaintiff and other members of the Class sold Sina ordinary shares between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

60.     At all relevant times, the market for Sina ordinary shares was efficient for the following reasons, among others:

(a) as a regulated issuer, Sina filed periodic public reports with the SEC;

(b) Sina regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public

disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c) Sina was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d) Sina ordinary shares actively traded in an efficient market, namely the NASDAQ, under the ticker symbol "SINA."

As a result of the foregoing, the market for Sina ordinary shares promptly digested current information regarding Sina from publicly available sources and reflected such information in Sina's ordinary share price. Under these circumstances, all sellers of Sina ordinary shares during the Class Period suffered similar injury through their sale of Sina ordinary shares at artificially deflated prices and the presumption of reliance applies.

## CLAIMS FOR RELIEF

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder Against All Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to, and throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other Class members to sell Sina ordinary shares at artificially deflated prices. Defendants also disseminated or approved the false statements specified above, which they knew or recklessly

disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their sale of Sina ordinary shares during the Class Period.

64.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they sold Sina ordinary shares at artificially deflated prices.  Plaintiff and the Class would not have sold Sina ordinary shares at the prices they did, or at all, if they had been aware that the market prices had been artificially and falsely deflated by Defendants' misleading statements.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their sale of Sina ordinary shares during the Class Period.

**COUNT II**

**For Violations of Section 20(a) of the Exchange Act**
**Against All Individual Defendants**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Sina within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about Sina, Individual Defendants had the power and ability to control the actions of Sina and its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

68.     WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)      Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)      Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

69.     Plaintiff demands a trial by jury.

Dated: September 19, 2025                    Respectfully submitted,

                                             By: */s/ Marco A. Dueñas*

                                             **SAXENA WHITE P.A.**
                                             Marco A. Dueñas
                                             10 Bank Street, Suite 882
                                             White Plains, NY 10606
                                             Tel.: (914) 437-8551
                                             Fax: (888) 631-3611

mduenas@saxenawhite.com

**REID COLLINS & TSAI LLP**
Rachel S. Fleishman
420 Lexington Avenue, Suite 2731
New York, NY 10170
Tel.: (212) 344-5200
Fax: (212) 344-5299
rfleishman@reidcollins.com

*Counsel for Plaintiff Kevin Lu*