**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: SINA CORPORATION SECURITIES LITIGATION | Case No.: 1:25-cv-07820-CM |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: | **Oral Argument Requested** |
| KEVIN LU, Individually and on behalf of others similarly situated. v. SINA CORPORATION, *et al*., Case No.: 1:25-cv-07820-CM | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS MORGAN
STANLEY & CO. LLC AND MORGAN STANLEY ASIA LIMITED
<u>TO DISMISS THE AMENDED COMPLAINT</u>**

WILMER CUTLER PICKERING
HALE AND DORR LLP
Andrew Rhys Davies
Daniel F. Schubert
Ross E. Firsenbaum
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 295-6475
Andrew.Davies@wilmerhale.com
Daniel.Schubert@wilmerhale.com
Ross.Firsenbaum@wilmerhale.com

*Attorneys for Defendants
Morgan Stanley & Co. LLC and
Morgan Stanley Asia Limited*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

THE COMPLAINT'S FACTUAL ALLEGATIONS.................................................................... 3

    A.   The Sina Take-Private Merger and Allegedly Fraudulent Proxy Materials ............... 3

    B.   MSAL's Discrete Role: Issuer of Fairness Opinion on the Sina Merger Price .......... 4

    C.   MS&Co.'s Separate Role: Underwriter of TuSimple's IPO..................................... 5

ARGUMENT ...................................................................................................................................... 6

I.      PLAINTIFFS' CLAIMS AGAINST MS&CO. AND MSAL ARE TIME-BARRED....... 6

II.    PLAINTIFFS FAIL TO PLEAD THEIR SECURITIES FRAUD CLAIMS ................... 10

    A.   Plaintiffs Do Not Plead a Section 10(b) Claim Against MS&Co............................ 10

        1. There is no misstatement claim against MS&Co. because it did not make
           any of the alleged misstatements ..................................................................... 10

        2. The Complaint does not plead a scheme liability claim against MS&Co.
           because it alleges neither an inherently deceptive act nor reliance...................... 10

        3. The Complaint does not plead any Section 10(b) claim as it fails
           to create a strong inference that MS&Co. acted with scienter ............................. 13

    B.   Plaintiffs Equally Fail to Plead a Section 10(b) Claim Against MSAL .................. 14

        1. The Complaint does not identify anything false or misleading in
           MSAL's Fairness Opinion and Presentation......................................................... 15

           a. The Complaint does not allege that MSAL disbelieved its opinions or that
              those opinions contain embedded misstatements of fact .................................16

           b. The Complaint also does not plead that MSAL's opinions were
              misleading by omission...................................................................................18

        2. Plaintiffs fail to plead that MSAL participated in a fraudulent scheme ............... 21

        3. Plaintiffs also fail to plead that MSAL acted with scienter................................. 22

    C.   The Complaint Fails to Plead Loss Causation or Class Standing as to Sina
       Shareholders Who "Sold" Into the Merger .............................................................. 24

CONCLUSION................................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*, 28 F.4th 343 (2d Cir. 2022) ......................................................................................14, 23

*C.D.T.S. v. UBS AG*, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015) ............................................................................................................................13, 22

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) ..................................................................................................................16

*Chapman v. Mueller Water Products, Inc.*, 466 F. Supp. 3d 382 (S.D.N.Y. 2020) ......................20

*City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011)..............................................................................................6, 7

*Curtis v. Aetna Life Insurance Co.*, 648 F. Supp. 3d 358 (D. Conn. 2023)...................................25

*Fisher v. Offerman & Co., Inc.*, 1996 WL 563141 (S.D.N.Y. Oct. 2, 1996)................................14

*Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2d Cir. 2000) ........................................................3

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016)................................................................................6

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664 (2d Cir. 2016)............................10

*Genesee County Employees' Retirement System v. DocGo Inc.*, 773 F. Supp. 3d 62 (S.D.N.Y. 2025)...................................................................................3, 11, 12, 22

*In re DNTW Chartered Accountant Securities Litigation*, 96 F. Supp. 3d 155 (S.D.N.Y. 2015) ..............................................................................................................14

*In re JP Morgan Chase Securities Litigation*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) ........................................................................................................................20, 23

*In re Lehman Bros. Securities & ERISA Litigation*, 131 F. Supp. 3d 241 (S.D.N.Y. 2015) ..........................................................................................................16, 17

*In re Pattern Energy Group Inc. Securities Litigation*, 2021 WL 311257 (D. Del. Jan. 28, 2021), *report and recommendation adopted,* 2021 WL 765760 (D. Del. Feb. 26, 2021) ....................................................................................................15

*In re Salomon Analyst Level 3 Litigation*, 373 F. Supp. 2d 248 (S.D.N.Y. 2005) .......................16

*In re Shanda Games Ltd. Securities Litigation*, 128 F.4th 26 (2d Cir.), *cert. denied sub nom. Shanda Games Ltd. v. Monk*, 146 S. Ct. 366 (2025) ....................................24, 25

*In re Tower Group International, Ltd. Securities Litigation*, 2015 WL 5813393 (S.D.N.Y. Sept. 18, 2015) ...................................................................................14

*In re Turquoise Hill Resources Ltd. Securities Litigation*, 625 F. Supp. 3d 164 (S.D.N.Y. 2022) ..................................................................................11, 12, 13

*In re Weight Watchers International Inc. Securities Litigation*, 504 F. Supp. 3d 224 (S.D.N.Y. 2020) .........................................................................................21

*Iowa Public Employee's Retirement System v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321 (S.D.N.Y. 2013) ..........................................................................23

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).........................10, 15

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ................................................21

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ...............................................................................6

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28 (2d Cir. 2024), *cert. denied*, 146 S. Ct. 261 (2025).....................13, 14, 16, 18, 22

*Noto v. 22nd Century Group, Inc.*, 35 F.4th 95 (2d Cir. 2022) ................................................10, 15

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund.*, 575 U.S. 175 (2015).................................................................................15, 16, 17, 18, 19

*Orient Plus International Ltd. v. Baosheng Media Group Holdings Ltd.*, 799 F. Supp. 3d 310 (S.D.N.Y. 2025).................................................................................19

*Pacific Investment Management Co. LLC v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010) ....................................................................................................13

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/*S, 11 F.4th 90 (2d Cir. 2021)....................................................................................11, 12, 21, 22

*Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014)...............................25

*Ridler v. Hutchinson Technology Inc.,* 216 F. Supp. 3d 982 (D. Minn. 2016).............................16

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ........................23

*Santa Fe Industry, Inc. v. Green*, 430 U.S. 462 (1977) .............................................................1, 21

*SEC v. Rio Tinto plc*, 2019 WL 1244933 (S.D.N.Y. Mar. 18, 2019) ...........................................16

*SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022)................................................................11, 21

*SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37 (S.D.N.Y. 2024)..................................................23

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148
      (2008).................................................................................................................................13

## STATUTES, RULES, AND REGULATIONS

15 U.S.C. § 77f(e)(1) ...................................................................................................................8

15 U.S.C. § 78u-4(b)(1)(B)..........................................................................................................16

28 U.S.C. § 1658(b) ......................................................................................................................6

## OTHER AUTHORITIES

*Autonomous Truck Firm TuSimple IPO Said to Raise $1.35 Billion*,
      Bloomberg (Apr. 14, 2021),
      https://www.bloomberg.com/news/articles/2021-04-14/autonomous-truck-
      firm-tusimple-ipo-said-to-raise-1-35-billion...........................................................................8

*Jumpstart Our Business Startups Act, Frequently Asked Questions*, United States
      Securities and Exchange Commission (Dec. 21, 2015),
      https://www.sec.gov/rules-regulations/staff-guidance/compliance-
      disclosure-interpretations/jumpstart-our-business-startups-act-frequently-
      asked-questions .....................................................................................................................8

*TuSimple Raises Over $1 Billion in U.S. IPO at Nearly $8.5 Billion* Valuation,
      Reuters (Apr. 15, 2021), https://www.reuters.com/world/tusimple-raises-
      over-1-billion-us-ipo-nearly-85-billion-valuation-2021-04-15/ .........................................8

# PRELIMINARY STATEMENT

Plaintiffs are former shareholders of Sina Corporation, a Cayman company formerly listed on Nasdaq that was taken private in a freeze-out merger led by its CEO, Defendant Charles Chao. Plaintiffs attempt to turn dissatisfaction with the merger price into federal securities fraud claims, alleging that the proxy materials—including a September 2020 fairness opinion by Morgan Stanley Asia Limited ("MSAL")—misrepresented Sina's value by fraudulently understating the value of Sina's stake in a separate company, TuSimple, Inc. Morgan Stanley & Co. LLC ("MS&Co.") had no role in the Sina merger; it is named only because it underwrote TuSimple's April 2021 IPO.

But Section 10(b) does not federalize disputes about a merger's fairness; it only provides a remedy for fraud. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477-78 (1977). And the Complaint does not plead viable securities fraud claims. The claims against MS&Co. and MSAL are time-barred. And the Complaint fails to plead core elements of a Section 10(b) claim: a misrepresentation or an inherently deceptive act; scienter; and, as to a portion of the putative class, loss causation and class standing.

1.    *Time-bar*. The claims against MS&Co. and MSAL are barred by the two-year limitations period. The Complaint's own narrative shows that all the "key facts" that constitute the alleged fraud were public no later than *April 2021*. Thus, the limitations period expired no later than *April 2023*, so these claims, asserted in *September 2025*, are time-barred. Taking those alleged key facts: (i) an *October 2020* SEC filing disclosed MSAL's allegedly fraudulent valuation of TuSimple, including the data and methodology on which it was based; (ii) *March 2021* SEC filings revealed that MS&Co. was underwriting TuSimple's IPO and that TuSimple filed its draft registration statement on the same day that Sina shareholders approved the merger; and (iii) in *April 2021*, TuSimple's IPO closed at a valuation that Plaintiffs say shows that MSAL's September

1

2020 valuation was fraudulent. And in ***January 2022***, other Sina shareholders made the same divergent-valuation-and-coordinated-timing allegations in a Section 1782 petition, confirming that these key alleged facts could be pleaded more than two years before this suit was filed.

2.    *Failure to plead the elements of Section 10(b) claims*.  The Complaint also fails to plead Section 10(b) claims. There is no genuine basis to bring claims against MS&Co., which had no role in the Sina merger: MS&Co. cannot be liable on a misstatement theory because it made none of the alleged misstatements, and its only alleged conduct—underwriting TuSimple's IPO—cannot support a scheme liability claim because it is not inherently deceptive. And MS&Co. is not liable under either Section 10(b) theory because there is no factual basis to plead that MS&Co. intended to defraud Sina's shareholders.

The claims against MSAL fail as well. Plaintiffs challenge a fairness opinion—which is subject to the demanding *Omnicare* standard—but allege no facts showing that MSAL disbelieved its opinion, embedded false facts in it, or omitted material information from it. There is no allegation that MSAL knew about valuation work that MS&Co. was allegedly performing for TuSimple's IPO. And the Complaint concedes that MS&Co. did not develop such a valuation until almost two months after MSAL issued its fairness opinion. Plaintiffs also fail to allege facts showing that MSAL intended to defraud Sina's shareholders.

Finally, the Complaint fails to plead loss causation or class standing as to putative class members who "sold" into the merger and whose shares were cancelled in exchange for the merger price. The Complaint's sole loss-causation allegation—that class members sold at prices that were fraudulently depressed by misstatements in the proxy materials—is not a viable theory of loss causation for them because they received the pre-set merger price. This pleading failure may be a product of Plaintiffs' lack of class standing to assert those claims. Because Plaintiffs are open-

2

market sellers, they lack the required incentive to prosecute whatever different, more challenging loss causation theories might be available to those who sold into the merger.

## THE COMPLAINT'S FACTUAL ALLEGATIONS

### A.  The Sina Take-Private Merger and Allegedly Fraudulent Proxy Materials

Sina Corporation is a Cayman company that was formerly listed on Nasdaq. ¶¶27, 42. The Complaint alleges that during the putative class period, Sina shareholders sold Sina shares at prices that were allegedly "artificially suppressed" by fraud. ¶¶42, 256, 267, 275. That fraud was purportedly accomplished through misstatements in proxy statements that Sina filed in October and November 2020 to seek shareholder approval of a merger through which the Buyer Group (Defendant Chao, Sina's CEO, and companies majority-owned by him, ¶1 n.1) took Sina private at a price of $43.30 per share. ¶¶4, 215, 224-44. Plaintiffs' core thesis is that the proxy materials misrepresented Sina's true value by fraudulently undervaluing TuSimple, Inc., a company in which Sina held a 34 percent equity stake and that later completed an IPO at a higher valuation than was reflected in the proxy materials. ¶¶13, 23, 105, 225-26. The Complaint also makes a host of other allegations, including that the proxy materials misrepresented Sina's valuation by applying a fraudulently inflated "HoldCo" discount to Sina. ¶¶227-28, 242.[1]

The putative class excludes shareholders who dissented from the merger and exercised their right to an appraisal of the fair value of their shares. ¶¶2-3, 245. But it includes (a) open-market sellers during the class period, and purports to include (b) shareholders who "sold into the merger," meaning those whose shares were cancelled in exchange for the merger price when the

---

[1] All citations to "¶" without a prefix refer to paragraphs in the Amended Complaint ("Complaint"). The Complaint's disputed factual allegations are presumed to be true for purposes of this motion only. *See, e.g.*, *Genesee Cnty. Emps.' Ret. Sys. v. DocGo Inc.*, 773 F. Supp. 3d 62, 78 (S.D.N.Y. 2025). The Court may consider documents that are incorporated by reference into and integral to the Complaint, *see id.* at 78, and may take judicial notice of well-publicized stock prices, *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000).

merger became effective. ¶¶2, 245. The dates and prices in their certifications indicate that Plaintiffs fall exclusively into category (a). ECF Nos. 36-1, 41-3; *see* ¶28.

### B.  MSAL's Discrete Role: Issuer of Fairness Opinion on the Sina Merger Price

MSAL, referenced in the Complaint as "Morgan Stanley Asia," is a Hong Kong-based broker-dealer. ¶39. MSAL's involvement with Sina began in August 2020, when it was retained as financial advisor to a Special Committee formed by Sina's board of directors to evaluate Chao's take-private offer. ¶¶39, 147. According to the Complaint, prior to MSAL's involvement, Sina had endured a decade or more of poor corporate governance and self-dealing by Chao. ¶¶42-102. Thus, as acknowledged in the Complaint, MSAL was tasked with valuing a company whose share price had declined by 70 percent over the prior two years, and which had the largest HoldCo discount (30 to 48 percent) of any U.S.-listed company, meaning that Sina's market capitalization had long been "far smaller than the value of its holdings." ¶¶51, 65, 100. The Complaint does not allege that MSAL had any role in the TuSimple IPO.

On September 28, 2020, MSAL issued an opinion (the "Fairness Opinion") and accompanying presentation (the "Presentation"), both of which were publicly filed with the preliminary proxy on October 13, 2020. ¶¶13, 241. Those documents, on which Plaintiffs rely, *see, e.g.,* ¶¶224-25, 227, 241-42, describe MSAL's work and analyses to arrive at its opinion that, as of September 28, 2020, the merger price was fair from a financial point of view to Sina's shareholders. *See* Ex. 1 (Fairness Opinion); Ex. 2 (Presentation).

The Presentation summarizes multiple valuation methodologies that MSAL applied to Sina, including trading price analyses, comparables, transactions, sum-of-the-parts, and leveraged buyout/recapitalization analyses. *Id.* at 20-37. And the Fairness Opinion and Presentation disclose that no market check had been performed for several reasons, including anticipated regulatory

4

barriers and Chao's indication that he would not support any alternative transaction. *Id.* at 39-40; Ex. 1 (Fairness Opinion) at F-4.

The Presentation identifies Sina's stake in TuSimple as one of its largest long-term investments. As plainly disclosed in the Presentation, MSAL valued that stake using "[p]ublic data as of Sep. 25, 2020," yielding a valuation range based on TuSimple's book value on the low end and TuSimple's most recent ("Series D") financing (net of a liquidity discount) on the high end. Ex. 2 (Presentation) at 32. The Presentation also discloses that MSAL applied a 30 to 45 percent HoldCo discount to its valuation of Sina and summarizes the analyses that support that discount. *Id.* at 20, 34-35. Significantly, the Fairness Opinion states that it was based on information known to MSAL on September 28, 2020 and that it would not be updated to reflect later events. Ex. 1 (Fairness Opinion) at F-3.

### C. MS&Co.'s Separate Role: Underwriter of TuSimple's IPO

The Complaint does not allege that MS&Co. (a New York-headquartered broker-dealer referenced in the Complaint as "Morgan Stanley USA," ¶38) had any role in the Sina merger, or in the alleged conduct of Defendant Chao. MS&Co.'s involvement with TuSimple began in March 2020, when TuSimple appointed MS&Co. as placement agent for a financing and, later, as underwriter for TuSimple's April 2021 IPO. ¶¶38, 109, 199.

The Complaint asserts that by the end of July 2020, MS&Co. "was valuing TuSimple as high as $7 billion for its upcoming IPO," (¶117), but in fact, the Complaint merely references press reports in August 2020, based on leaks, that TuSimple was targeting an IPO valuation "between $3.5 billion and $7 billion," ¶¶185, 188, 192. The Complaint acknowledges that it was not until late December 2020 that MS&Co. formed the "[p]reliminary" view, that "[b]ased on current conditions," TuSimple "could" achieve an IPO valuation of $5-7 billion. ¶200. Indeed, an MS&Co.

document on which the Complaint relies reflects that, as late as December 9, 2020, MS&Co.'s "[v]aluation target for [TuSimple's] IPO" remained "TBD." *See* Ex. 3 at 7 (Dec. 9, 2020 EUC Memo) (cited ¶196).

TuSimple's IPO closed in mid-April 2021, with a valuation of $8.5 billion, or $40 per share. ¶203. Within a year, TuSimple's stock was trading at around $10, and is now trading at approximately $0.25.  Ex. 4 (Stock Price Chart).

**ARGUMENT**

**I.    PLAINTIFFS' CLAIMS AGAINST MS&CO. AND MSAL ARE TIME-BARRED**

The claims against MS&Co. and MSAL are barred by the two-year statute of limitations in 28 U.S.C. § 1658(b) because "'a reasonably diligent plaintiff would have discovered the facts constituting the [alleged] violation, including scienter'" more than two years before this action was filed in September 2025. *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 652 (2010)). Section 10(b) claims are properly dismissed at the motion-to-dismiss stage when, as here, the complaint, including documents that can be considered on a Rule 12(b)(6) motion, shows that the "key facts constituting the violation" were "either known or freely available to investors" more than two years before they filed suit. *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 535-36 (S.D.N.Y. 2014) (citation omitted), *aff'd*, 639 F. App'x 664 (2d Cir. 2016).

A plaintiff is charged with knowledge of facts that a reasonably diligent plaintiff would have discovered. *City of Pontiac*, 637 F.3d at 174. And a reasonably diligent plaintiff would investigate based on "prospectuses, quarterly reports, and other information related to their investments," "[t]he filing of related lawsuits, [and] news articles and analyst's reports," all of which can be considered on a motion to dismiss. *Gavin/Solmonese*, 68 F. Supp. 3d at 536.

6

Here, the Complaint shows that the three "key facts" that constitute Plaintiffs' misrepresentation and scheme liability claims against MS&Co. and MSAL were known or freely available to Plaintiffs *no later than April 2021*. Because they were all public by then, "a reasonably diligent plaintiff would have sufficient information about [these] fact[s] to adequately plead [them] in a complaint," so they are "deemed 'discovered'" for purposes of the statute of limitations. *City of Pontiac,* 637 F.3d at 175.

**Key Fact 1 (MSAL's valuation of TuSimple)**:  By valuing TuSimple using public data about its book value and most recent equity financing, MSAL's September 2020 Fairness Opinion and Presentation "misrepresented" the "true value" of Sina's interest in TuSimple. ¶¶12-13, 225-26.

Key Fact 1 was publicly known in ***October 2020***.  Publicly filed in October 2020, MSAL's Presentation disclosed MSAL's valuation of Sina's interest in TuSimple and the valuation methodology and data MSAL had used. ¶¶13, 241, 224; *see* Ex. 2 at 32.

**Key Fact 2 (MS&Co.'s role in TuSimple's IPO; TuSimple's draft IPO filing)**:  By August 2020, TuSimple had engaged MS&Co. to underwrite TuSimple's IPO. ¶128. TuSimple filed the draft registration statement for its IPO in December 2020 on "the very same day" that Sina shareholders had approved the merger, purportedly showing that the Sina merger and TuSimple IPO were components of a scheme to defraud Sina's shareholders. ¶¶8, 22-23, 118, 122-23, 130.

Key Fact 2 was publicly known in ***March 2021***: Publicly filed in March 2021, the registration statement for TuSimple's IPO, identified MS&Co. as an underwriter. ¶131; *see* Ex. 5 (cover page and page 167 of registration statement). Shortly after the March 2021 public filing of the registration statement, TuSimple's December 2020 draft registration statement, too, was

7

publicly filed, revealing that it had been confidentially filed on "the very same day" as Sina's shareholders approved the merger. ¶¶22-23, 201-02.[2]

**Key Fact 3 (TuSimple's IPO valuation)**:  As underwriter for TuSimple's IPO, MS&Co. had concluded that TuSimple's value for IPO purposes was higher than the valuation in MSAL's September 2020 Presentation. ¶¶200, 226. The IPO closed in April 2021 at an $8.5 billion valuation, showing that Sina's stake in TuSimple was worth $2.1 billion more than MSAL's September 2020 valuation. ¶23.

Key Fact 3 was publicly known in **_April 2021_**: In April 2021, TuSimple's IPO closed with a valuation of $8.5 billion. ¶¶131-32; *see* Ex. 6, *TuSimple raises over $1 billion in U.S. IPO at nearly $8.5 billion valuation*, Reuters (Apr. 15, 2021); Ex. 7 *Autonomous Truck Firm TuSimple IPO Said to Raise $1.35 Billion*, Bloomberg (Apr. 14, 2021) (noting TuSimple's $8.5 billion IPO valuation).

Underscoring that a reasonably diligent plaintiff could have pleaded these "key facts" more than two years before Plaintiffs filed this lawsuit, other Sina shareholders did exactly that. In *January 2022*—more than three-and-a-half years before Plaintiffs commenced this action—dissenting Sina shareholders in the Cayman Islands Action, *see* ¶3, filed a petition under 28 U.S.C. § 1782 seeking discovery from MS&Co. Ex. 8 (*In re Oasis Focus Fund LP*, No. 1:22-mc-00024-MN-SRF, Mem. Supp. 1782 Pet. [ECF No. 2] ("Oasis Pet.") at 5-6, 12 (D. Del. Jan. 20, 2022)). Asserting that MSAL and MS&Co. reached "dramatically divergent conclusions" about

---

[2] *See* 15 U.S.C. § 77f(e)(1) (requiring public filing of draft registration statement before the issuer conducts a road show); *see also Jumpstart Our Business Startups Act, Frequently Asked Questions*, United States Securities and Exchange Commission (Dec. 21, 2015), Questions 8-10, *available at* https://www.sec.gov/rules-regulations/staff-guidance/compliance-disclosure-interpretations/jumpstart-our-business-startups-act-frequently-asked-questions.

TuSimple's value, the *January 2022* petition alleged the same three "key facts" on which Plaintiffs base their claims here:

1.    By valuing TuSimple using public data about its book value and most recent equity financing, MSAL issued "a lowball valuation analysis [of Sina] to justify the Merger." Oasis Pet. at 5-8, 12. This assertion mirrors Key Fact 1, *i.e.*, Plaintiffs' allegations about MSAL's use of those data to misrepresent TuSimple's value. ¶¶12-13, 192, 194, 225-26.

2.    While MSAL was valuing Sina, MS&Co. "was participating in an IPO [of TuSimple]." TuSimple filed its confidential draft registration statement immediately after Sina's shareholders approved the merger. Oasis Pet. at 5-6, 12. This pre-echoes Key Fact 2, *i.e.*, Plaintiffs' allegations that MSAL and MS&Co. had "multiple roles in the [Sina] Merger and the TuSimple IPO" and that Sina's EGM approved the Sina merger on the "very same day" that TuSimple's draft Registration Statement was confidentially filed. ¶¶22-23, 125.

3.    "[J]ust one month after the closing of the [Sina] Merger," TuSimple's IPO closed at a price "which valued TuSimple at an amount that was multiples of MS Asia's lowball valuation." Oasis Pet. at 5-6, 12. This assertion from the January 2022 filing corresponds to Key Fact 3, *i.e.*, Plaintiffs' allegation that TuSimple's IPO valuation showed that Sina's stake was worth "approximately $2.1 billion more than represented to shareholders." ¶23.

If Plaintiffs contend that their other complaints about the Fairness Opinion and the process that led to it (that MSAL applied a 30 to 45 percent HoldCo discount and that the Special Committee did not perform a market check or include a majority-of-the-minority provision, ¶¶154, 184, 227-42) were also "key facts," those facts, too, were all known or discoverable long outside the limitations period. Indeed, those facts were all alleged in the *January 2022* Section 1782 petition, Oasis Pet. at 4, 13, having been disclosed in the Fairness Opinion, Presentation, and the

Preliminary Proxy Statement, all of which were filed in ***October 2020***. Ex. 2 at 34-35, 39-40 (Presentation); Ex. 9 at 29 (Proxy).

In sum, Plaintiffs' claims against MS&Co. and MSAL are time-barred because, just as in *Gavin/Solmonese*, "'a substantial portion' of the information alleged in the complaint and integral documents was either known or freely available to investors" more than two years before Plaintiffs filed this lawsuit. 639 F. App'x at 667.

## II.     PLAINTIFFS FAIL TO PLEAD THEIR SECURITIES FRAUD CLAIMS

### A.  Plaintiffs Do Not Plead a Section 10(b) Claim Against MS&Co.

This is a case about a fraud purportedly perpetrated on Sina shareholders through alleged misstatements in proxy materials. MS&Co., however, had no role in the Sina merger and made none of the alleged misstatements to Sina shareholders. The role that MS&Co. did perform—IPO underwriter for a different company (TuSimple)—is routine investment banking activity and not inherently deceptive. And no facts are alleged to show that MS&Co. did anything with the intent to defraud Sina shareholders. Thus, there is no Section 10(b) claim against MS&Co.

### 1.     There is no misstatement claim against MS&Co. because it did not make any of the alleged misstatements

Plaintiffs have no misstatement claim against MS&Co. under Rule 10b-5(b), which is limited to the "maker" of a statement. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 103 (2d Cir. 2022) (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)). As MS&Co. had no role in the Sina merger, there is and can be no allegation that MS&Co. made any of the challenged statements to Sina shareholders.

### 2.     The Complaint does not plead a scheme liability claim against MS&Co. because it alleges neither an inherently deceptive act nor reliance

"[A] plaintiff cannot use 'scheme' allegations under Rules 10b-5(a) and (c) to circumvent the rule of *Janus*," under which only the "maker" of a statement can be liable in a misstatement

case. *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 250-51 (S.D.N.Y. 2022) (citing *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022)). Thus, "courts must scrutinize pleadings to ensure that misrepresentation [and] omission claims do not proceed under the scheme liability rubric." *Genesee Cnty. Emps.' Ret. Sys. v. DocGo Inc.*, 773 F. Supp. 3d 62, 92 (S.D.N.Y. 2025). To plead a scheme liability claim under Rule 10b-5(a) and (c), a plaintiff must allege facts showing "[1] that the defendant committed a deceptive or manipulative act . . . in furtherance of the alleged scheme to defraud . . . and [2] reliance." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/*S, 11 F.4th 90, 105 (2d Cir. 2021). The Complaint pleads neither of these elements as to MS&Co.

*No "inherently deceptive" act.* To satisfy Rule 9(b), the Complaint needed to "specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Id.* (internal quotation marks omitted). Instead, the Complaint offers formulaic assertions that "Morgan Stanley Defendants" "participated in the scheme to undervalue Sina," ¶¶236(vii), 238(x), 242(x), conclusory references to a "scheme," ¶¶4, 24, 271-77, and a host of other allegations that are indiscriminately directed at all ten "Defendants," ¶¶16, 20, 156, 226, 228, 230, 232, 251-54, and that have nothing to do with MS&Co.'s only role—underwriter of TuSimple's IPO. The Second Circuit has squarely held that a plaintiff does not plead a scheme liability claim by adding these kinds of "conclusory assertion[s]" about a "scheme" to a complaint predicated on misstatements (here, those in Sina's proxy statements, ¶¶13, 224-44). *See Danske Bank*, 11 F.4th at 105. Plaintiffs' failure to plead the elements of their claims is conspicuous, given that they drafted their pleadings with the unusual benefit of a full trial record in the Cayman Islands Action. ¶3 & n.2.

11

Entirely absent from the Complaint are the required well-pled factual allegations showing that MS&Co. violated Rule 10b-5(a) and (c) by performing an "an inherently deceptive act that was distinct from an alleged misstatement, *i.e.*: sham agreements, sham transactions, sham companies, or undisclosed payments to doctors who appeared independent." *Genesee Cnty.*, 773 F. Supp. 3d at 91-92; *see also In re Turquoise Hill*, 625 F. Supp. 3d at 250-51 (same). The Complaint cannot plead a scheme liability claim simply by alleging that MS&Co. was underwriter for TuSimple's IPO, that TuSimple and MS&Co. "formed the view" that TuSimple's IPO could not proceed until Sina had been taken private, that the TuSimple IPO and Sina merger thereafter "moved in lock step," and that, by late December 2020, almost two months after MSAL issued its Fairness Opinion, MS&Co. had formed the preliminary view that TuSimple could achieve an IPO valuation of $5-7 billion. ¶¶8, 109-111, 118, 122-24, 191, 196, 199-200; *supra* at 5. These allegations describe routine investment banking, not the kind of "sham" conduct that constitutes an inherently deceptive act. *See Genesee Cnty.* 773 F. Supp. 3d at 91-92; *In re Turquoise Hill*, 625 F. Supp. 3d at 250-51. Plaintiffs vaguely assert that "at least two" (unidentified) MS&Co. employees who had some (also unidentified) role on TuSimple's IPO had some (unarticulated) involvement in an (unsuccessful) pitch to assist Chao to finance the Sina merger. ¶124. But the alleged pitch had nothing to do with MSAL's work as financial advisor to the Special Committee. And it also is not an inherently deceptive act, much less pled with the specificity that Rule 9(b) requires. *See Danske Bank*, 11 F.4th at 105.

*No reliance.* The Complaint fails to plead a scheme liability claim for the additional reason that there is no allegation that Sina's shareholders relied on anything that MS&Co. did. Again, MS&Co. had no role in communications to Sina shareholders. And scheme liability claims fail for lack of reliance when, as here, a complaint fails to allege that a defendant's conduct made it

"'necessary or inevitable'" that shareholders would be misled. *Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 159-60 (2d Cir. 2010) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 161 (2008)). Here as in *Stoneridge* and *Pacific Investment*, there is no allegation, and no basis to allege, that anything MS&Co. did as TuSimple's IPO underwriter made it "necessary or inevitable" that Sina's shareholders would be misled.

### 3.    The Complaint does not plead any Section 10(b) claim as it fails to create a strong inference that MS&Co. acted with scienter

To plead any claim under Section 10(b), a complaint's factual allegations must create an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 122 F.4th 28, 48 (2d Cir. 2024), *cert. denied*, 146 S. Ct. 261 (2025); *see also In re Turquoise Hill*, 625 F. Supp. 3d at 247 ("Scheme liability claims are subject to the PSLRA pleading standard with respect to scienter."). Plaintiffs offer no facts raising any inference that MS&Co. intended to defraud Sina's shareholders, much less one that is "cogent and at least as compelling" as the obvious "opposing" inference—that MS&Co. was engaged in the "nonfraudulent" business of underwriting *another* company, TuSimple's, IPO. *DeCarlo*, 122 F.4th at 48.

Plaintiffs' attempt to group-plead scienter against all ten Defendants, ¶¶251-54, fails because "[s]cienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015).

And Plaintiffs navigate neither of the potential routes to pleading scienter against MS&Co. individually. *First*, the Complaint does not allege facts showing that MS&Co. had "both motive and opportunity to commit the [alleged] fraud [on Sina's shareholders]." *DeCarlo*, 122 F.4th at

48. In addition to being unconnected to Sina and its shareholders, MS&Co.'s incentive to earn a fee for underwriting TuSimple's IPO, ¶118, "is not itself the kind of incentive or motivation that raises an inference of scienter." *DeCarlo*, 122 F.4th at 48-49 (desire to maintain share price does not plead scienter). "An underwriter's alleged motive to earn its underwriting fees is not alone sufficient to sustain a strong inference of fraudulent intent. If it were, every underwriter . . . whose compensation or commission depended on the completion of an initial public offering would have a motive to commit fraud." *Fisher v. Offerman & Co., Inc.*, 1996 WL 563141, at *7 (S.D.N.Y. Oct. 2, 1996).[3] *Second*, when, as here, a complaint fails to plead motive and opportunity, "the circumstantial evidence of conscious misbehavior must be correspondingly greater and show highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Plaintiffs make no attempt to allege such facts against MS&Co.

### B. Plaintiffs Equally Fail to Plead a Section 10(b) Claim Against MSAL

Whatever Plaintiffs' views about the fairness of the merger price, they have not pleaded that MSAL's opinions on that topic were fraudulent under the exacting *Omnicare* standard. Far from supporting them, Plaintiffs' claims are contrary to the documents on which the Complaint relies. Those documents reflect that MSAL disclosed the inputs it used and the analyses it performed to support its opinions, including its valuation of TuSimple and the HoldCo discount MSAL used. Nothing in the Complaint shows that MSAL disbelieved its opinions, that they contained embedded misstatements, or that they were misleading by omission—much less that

---

[3] *See also In re DNTW Chartered Accts. Sec. Litig.*, 96 F. Supp. 3d 155, 164-65 (S.D.N.Y. 2015) (auditor's generalized interest in fees insufficient to support inference it would risk reputation and penalties by committing fraud); *In re Tower Group Int'l., Ltd. Sec. Litig.*, 2015 WL 5813393, at *6 (S.D.N.Y. Sept. 18, 2015) (similar).

MSAL issued them intending to deceive Sina's shareholders. As the Supreme Court has said, opinions are not subject to the kind of "Monday morning quarterbacking" that Plaintiffs are inviting here. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund.*, 575 U.S. 175, 186 (2015).

### 1. The Complaint does not identify anything false or misleading in MSAL's Fairness Opinion and Presentation

A defendant can only be liable under Rule 10b-5(b) for misstatements of which it is the "maker," *i.e.,* the "'entity with ultimate authority over the statement.'" *Noto*, 35 F.4th at 103 (quoting *Janus Cap. Grp.,* 564 U.S. 142). Thus, MSAL can only be liable for alleged misstatements in its Fairness Opinion and Presentation. As alleged, those statements are:

- "Based on and subject to the foregoing, we are of the opinion on the date hereof [Sept. 28, 2020] that the Per Share Merger Consideration to be received by holders of the Ordinary Shares . . . pursuant to the Merger Agreement is fair from a financial point of view to such holders." ¶241; *see* Ex. 1 at F-4 (Fairness Opinion).

- Based on public data, MSAL valued Sina's stake in TuSimple in a range between $186 million (reflecting TuSimple's book value as of June 30, 2020) and $288 million (reflecting TuSimple's valuation as of its September 2019 Series D capital raise, less a liquidity discount). ¶225; *see* Ex. 2 at 32 (Presentation).

- MSAL applied a "'HoldCo Discount' [to Sina of] between 30% and 45%." ¶227; *see* Ex. 2 at 26 (Presentation).

But the Complaint does not plead that these statements were false or misleading. Like any other opinion, a fairness opinion is actionable only if found misleading under the exacting standard set forth in *Omnicare. See In re Pattern Energy Grp. Inc. Sec. Litig.*, 2021 WL 311257, at *11 (D. Del. Jan. 28, 2021), *report and recommendation adopted,* 2021 WL 765760 (D. Del. Feb. 26,

15

2021); *see also Ridler v. Hutchinson Tech. Inc.,* 216 F. Supp. 3d 982, 990 (D. Minn. 2016). The *Omnicare* standard applies to fairness opinions because "[w]hether a particular deal is 'fair' is, after all, not a determinate, verifiable statement." *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 253 (S.D.N.Y. 2015). Indeed, just like the bottom-line fairness opinion itself, the valuation "models and their predictions" that support a fairness opinion "can only fairly be characterized as subjective opinions." *In re Salomon Analyst Level 3 Litig.*, 373 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005) (Lynch, J.); *see also SEC v. Rio Tinto plc*, 2019 WL 1244933, at *8 (S.D.N.Y. Mar. 18, 2019) (valuation of asset is an opinion subject to *Omnicare*). "The [*Omnicare*] standard for opinion liability presents 'no small task for an investor' seeking to plead that an opinion is misleading." *DeCarlo*, 122 F.4th at 42 (quoting *Omnicare,* 575 U.S. at 194). That task proves too large here.

### a. The Complaint does not allege that MSAL disbelieved its opinions or that those opinions contain embedded misstatements of fact

To comply with the PSLRA, a plaintiff asserting a Rule 10b-5(b) claim "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (citing 15 U.S.C. § 78u-4(b)(1)(B)). To plead that an *opinion* is false, a complaint must allege facts showing that (1) "the speaker did not hold the belief she professed," or (2) the opinion contains "embedded statements of fact that are untrue." *DeCarlo*, 122 F.4th at 42.

Closing off the first route, the Complaint alleges no facts showing that MSAL disbelieved its opinions that (a) based on the analyses and data described in the Fairness Opinion, the merger price was "fair from a financial point of view to Sina shareholders," ¶241, (b) the data disclosed in the Presentation yielded the stated range of values for Sina's stake in TuSimple, ¶¶225, 227, or

(c) the analyses disclosed in the Fairness Opinion supported the application of a HoldCo discount of 30 to 45 percent, ¶227.

The assertion that the merger price "was substantially below the true and fair value of Sina ordinary shares," ¶¶226, 228, 242(xiv), does not plead falsity because, even if "an investor can ultimately prove the belief wrong," that does not show that the opinion was not genuinely held. *Omnicare*, 575 U.S. at 186. Plaintiffs also do not plead falsity by alleging that the Special Committee "demanded" that MSAL "massively reduce its valuation for TuSimple to 'book value,'" ¶¶12, 192, because, as the Complaint acknowledges, MSAL "***disagreed***" with the Special Committee and did not comply with the alleged "demand," using book value only as the *low*-end of the valuation range, ¶¶12-13, 194 (emphasis in original); *see* Ex. 2 (Presentation) at 32. Similarly, the allegation that, over two months before MSAL completed its analyses, an MSAL banker referenced the difficulty of valuing a complex entity like Sina and the need to conduct that challenging work in a manner that would protect MSAL's "franchise/reputation" in the market, ¶165, provides no basis to infer that MSAL disbelieved the ultimate output of its work. Finally, the Complaint provides no basis to infer that MSAL did not believe that the disclosed HoldCo discount was in order. To the contrary, Plaintiffs admit that "for years" third-party analysts and investors had imposed on Sina a HoldCo discount of between 30 and 48 percent. ¶¶60-62, 65, 100.

The second route to falsity is also barred by Plaintiffs' inability to allege that any of MSAL's opinions contained "embedded" misstatements of fact. As the court said in *In re Lehman*, "a statement that a deal is 'fair' reasonably may be understood as a statement . . . that the opinion reflects or is based upon one or more accepted valuation metrics," such as discounted cash-flow analyses. 131 F. Supp. 3d at 253. Here, the Presentation disclosed that MSAL had employed just such metrics and analyses. *See* Ex. 2 (Presentation) at 10-13, 27-32, 34; *see also* s*upra* at 5. The

Complaint does not and cannot allege that MSAL did not perform those analyses or use those metrics or that its analyses did not yield the valuations set forth in the Presentation or support the Fairness Opinion.

### b. The Complaint also does not plead that MSAL's opinions were misleading by omission

An opinion is misleading by omission only if it "omits material facts about the [speaker's] inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement [of opinion] itself." *DeCarlo*, 122 F.4th at 42 (second alteration in original). To plead a claim under this demanding standard, a plaintiff "must identify particular (and material) facts going to the basis for the [challenged] opinion—facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 575 U.S. at 194. Applying these standards, the Complaint does not plead that MSAL's challenged opinions were misleading by omission.

*Valuation of TuSimple*. The Complaint contains no allegations supporting the assertion that MSAL "failed to disclose" that "Defendants concealed the true value of [Sina's] investment in TuSimple at the time of the Merger." ¶¶226, 242. Under *Omnicare*, opinions may be misleading by omission when they are nothing but "baseless, off-the-cuff judgments." 575 U.S. at 190. But "[t]he reasonable investor understands a statement of opinion in its full context," including "hedges [and] disclaimers," and there is liability only "for the omission of material facts that cannot be squared with such a fair reading." *Id.* The Presentation disclosed that, as of September 28, 2020, MSAL had derived a valuation range for Sina's stake in TuSimple using public historical data that was specifically identified in the Presentation. Ex. 2 at 32 (Presentation). This is not the kind of "baseless, off-the-cuff judgment[]" that could support liability. *Omnicare*, 575 U.S. at 190.

18

Of course MSAL's September 2020 valuation did not use the IPO valuation that TuSimple achieved six months later, but that does not make it misleading by omission. MSAL properly did not base its valuation on prognostications about future events, and no one reading the Fairness Opinion or Presentation could have understood otherwise. Nor is there any viable argument that MSAL could or should have used the up-to-$7 billion IPO valuation that *MS&Co.* developed as TuSimple's underwriter. ¶¶12, 200. No facts are alleged to show that MSAL was aware of that valuation that a different entity, MS&Co., developed through an engagement with a different client. An omission claim cannot be based on speculation that the defendant "had knowledge of the allegedly omitted information." *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, 799 F. Supp. 3d 310, 359 (S.D.N.Y. 2025). In any event, the Complaint acknowledges that MS&Co. did not develop that valuation until almost two months after MSAL issued its Fairness Opinion. ¶200; *see supra* at 5, 12.

*HoldCo Discount*. The Complaint equally fails to plead facts supporting its assertion that MSAL "failed to disclose" that "the Holdco Discount was created and/or inflated by Defendants' fraudulent scheme and was not a valid reduction in the true and fair value of Sina," ¶228, or that "Defendants' scheme manipulated and inflated the Holdco Discount," ¶242. *Omnicare* held that this kind of conclusory rhetoric fails to plead that an opinion is misleading by omission. *See* 575 U.S. at 194, 196. The Complaint alleges no facts showing that MSAL's application of the HoldCo discount represented the kind of "baseless, off-the-cuff judgment" that could support a misleading-by-omission claim. *Id.* at 190. MSAL had to value Sina as it was, not as it might be under different circumstances. And MSAL showed its workings supporting a 30 to 45 percent HoldCo discount, including by illustrating that, "for years," as Plaintiffs say, the market had applied a large HoldCo discount to Sina. ¶¶60-62; Ex. 2 at 26 (Presentation) at 34-35. An opinion is not misleading by

19

omission when, as here, the speaker "state[s] the basis for its . . . calculations." *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 404 (S.D.N.Y. 2020).

*MSAL's Independence.* The Complaint does not allege facts supporting the assertion that MSAL "failed to disclose" that it "did not maintain [its] independence and participated in the scheme to undervalue Sina and its ordinary shares" and its analysis "was not independent and was manipulated in collusion with Sina Defendants." ¶242. The Complaint posits that MSAL wanted "to please Sina in hopes of future work," ¶125, but there is no allegation that this had any impact on MSAL's opinions. More fundamentally, this kind of generic assertion fails to plead fraud because every investment bank (or virtually any other business) has "hopes of future work" any time it is involved in any transaction. *Cf. In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (scienter cannot be pled through motives that "can be imputed to all corporations and their officers," such as "[g]eneralized allegations of intent to maintain lucrative business relationships and to establish new ones"). In any event, the Proxy Statement disclosed what was purportedly concealed—that "Morgan Stanley may seek to provide financial advisory and financing services to [Sina] and [its] affiliates in the future and would expect to receive fees for the rendering of these services." Ex. 9 at 45 (Proxy).

*Weibo's Q2 Earnings.* The allegation that Chao delayed the release of Weibo's Q2 2020 results contrary to MSAL's exhortations, ¶¶204-14, 242(xii), too, fails to plead that MSAL's opinions were misleading by omission. On its face, the Presentation shows that Weibo's Q2 2020 results *were* included in the valuation work that supported MSAL's Fairness Opinion. *See* Ex. 2 at 9 (Presentation) (showing that MSAL incorporated Weibo's 20Q2 results in its "Revenue and YoY Growth" and "Gross Profit" charts).

The remaining alleged "fail[ures] to disclose" do not plead that MSAL's opinions were misleading by omission because they concern alleged defects in the merger *process*, including that the Special Committee failed to perform a market check to obtain price discovery, ¶¶232(iv)-(v), 242(iv), (vii)-(ix), and "g[a]ve away" the majority-of-the-minority provision ("MOTM") for inadequate consideration, ¶¶20, 232(iii), 242(vi). Such alleged process shortcomings do not violate Section 10(b), which does not guarantee a fair transaction, only one that is free of fraud. *Santa Fe Indus.,* 430 U.S. at 477-78; *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 246-48 (S.D.N.Y. 2020) ("Plaintiffs' fundamental disagreements with Defendants' business judgments ... are not actionable under Section 10(b) and Rule 10b-5.") (internal quotation marks omitted). Nonetheless, shareholders were told that (a) the Special Committee dropped its request for a MOTM provision in exchange for a small increase in the merger price, *see* Ex. 9 at 20-21 (Proxy), and (b) the Special Committee had not performed a market check or considered alternative transactions, not only because of the Buyer Group's stated position to not support alternative transactions, but also due to regulatory obstacles in China. Ex. 1 (Fairness Opinion) at F-4; Ex. 2 (Presentation) at 38-40.

### 2.    Plaintiffs fail to plead that MSAL participated in a fraudulent scheme

Plaintiffs equally do not plead a scheme liability claim against MSAL because "an actionable scheme liability claim requires something *beyond* misstatements and omissions, such as dissemination." *Rio Tinto*, 41 F.4th at 49 (reaffirming *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 177-78 (2d Cir. 2005)). Plaintiffs who cannot satisfy the pleading standard for Rule 10b-5(b) misstatement claims cannot avoid dismissal by "recasting their pleadings" as scheme liability claims. *See id.* at 55. Here, Plaintiffs attempt precisely that prohibited tactic.

To plead a scheme liability claim against MSAL, the Complaint must "specify what deceptive or manipulative acts [MSAL] performed." *Danske Bank*, 11 F.4th at 105 (internal

21

quotation marks omitted). It does not do so. Beyond making the purported misstatements and omissions in its Fairness Opinion and Presentation, the Complaint does not "specify" that MSAL committed any inherently deceptive act, such as creating "sham agreements, sham transactions, sham companies, or undisclosed payments to doctors who appeared independent." *Genesee Cnty. Emps.' Ret. Sys.* 773 F. Supp. 3d at 91-92. As in *Danske Bank*, the scheme liability claim against MSAL "cannot go forward" based on the conclusory, group-pleaded assertions about a "scheme," *e.g.*, ¶¶232(ii)-(iii), 242(ii)-(iii), (vi), (x), that are tacked on to a Complaint that is concerned with alleged misstatements. *See Danske Bank*, 11 F.4th at 105.

### 3. Plaintiffs also fail to plead that MSAL acted with scienter

Supplying an independent basis for dismissal, Plaintiffs fail to allege facts creating the required "strong inference" that MSAL acted with scienter. *DeCarlo*, 122 F.4th at 48. MSAL had no role in the TuSimple IPO. And as for MSAL's discrete role in the Sina merger, the Complaint offers no facts raising any inference that MSAL acted with intent to defraud Sina's shareholders— certainly not an inference that is "cogent and at least as compelling" as the obvious "opposing" inference that MSAL engaged in the "nonfraudulent" quotidian business of performing a valuation analysis and rendering a fairness opinion in exchange for a fee. *DeCarlo*, 122 F.4th at 48.

The scienter allegations that the Complaint levels at all ten Defendants collectively, and in which MSAL is not even mentioned, ¶¶251-254, are unavailing because scienter must be pleaded on a defendant-by-defendant basis. *C.D.T.S.*, 2013 WL 6576031, at *6. And the Complaint treads neither of the well-trod paths to plead scienter against MSAL individually. *First*, the Complaint does not plead motive and opportunity to commit fraud by alleging that MSAL "sought to please Sina in hopes of future work," and "contemplat[ed]" "lowball[ing]" its fee to that end. ¶125. As they could be "imputed to all corporations and their officers," such "[g]eneralized allegations of intent to maintain lucrative business relationships and to establish new ones do not set forth a

22

motive for scienter purposes." *In re JP Morgan Chase*, 363 F. Supp. 2d at 621; *see also Iowa Pub. Emp's. Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 333 (S.D.N.Y. 2013) ("general desire to maintain a profitable business relationship" does not plead motive as to auditor).

*Second*, the Complaint fails to plead conscious misbehavior by showing "highly unreasonable behavior or that which evinces an extreme departure from the standards of ordinary care." *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 355. The Complaint offers no facts to support the rhetorical assertion that MSAL schemed with the Buyer Group to depress Sina's share price. ¶¶4, 232(vi), 242(ii)-(iii). Plaintiffs also do not plead scienter by showing that MSAL "knew facts or had access to information suggesting that [its] public statements were not accurate," *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110 (2d Cir. 2009), given that (a) the Complaint alleges no facts showing that MSAL "knew" or "had access to" information about MS&Co.'s work for TuSimple, and (b) the Complaint reflects that MS&Co. did not develop the $7 billion valuation for TuSimple's IPO until almost two months after MSAL issued its Fairness Opinion. ¶200; *see supra* at 5, 12, 19. A complaint does not plead scienter when, as here, it shows that the defendant "openly" "reve[aled]" the relevant facts. *SEC v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 96–97 (S.D.N.Y. 2024) (dismissing Section 10(b) claim for failure to plead scienter). Here, on their face, the Fairness Opinion and Presentation reveal (a) the work that MSAL had done, including a range of standard valuation techniques, (b) the bases for its valuation of TuSimple and for the application of a HoldCo discount, and (c) the structural impediments to alternative transactions, market checks, and price discovery. Ex. 1 (Fairness Opinion) at F-2-F4; Ex. 2 (Presentation) at 16-40; *see supra* at 4-5. Here, as in *SolarWinds*, the very documents on which the Complaint relies preclude the required strong inference of scienter.

23

**C. The Complaint Fails to Plead Loss Causation or Class Standing as to Sina Shareholders Who "Sold" Into the Merger**

Plaintiffs purport to represent a putative class that includes Sina shareholders who "sold" into the merger—that is, people whose shares were cancelled on March 22, 2021 in exchange for the merger price of $43.30 per share. ¶¶2, 222. Those claims should be dismissed because the Complaint pleads neither loss causation nor class standing as to them.

*Loss Causation.* The Complaint seeks to plead loss causation by alleging that Defendants' purported fraud caused Plaintiffs and members of the putative class "to sell their shares at a depressed price." ¶256; *accord* ¶¶258(e), 267, 275. But as the Second Circuit has held, that is not a viable theory of loss causation for minority shareholders who "sell" into a freeze-out merger. *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 59 n.21 (2d Cir.), *cert. denied sub nom. Shanda Games Ltd. v. Monk*, 146 S. Ct. 366 (2025). Simply put, there is "no causal link between the Proxies and this loss" because frozen-out minority shareholders will only ever receive the pre-agreed merger price. *See id.* To be sure, the Second Circuit has said that such a shareholder may plead loss causation by alleging that, but for the alleged fraud, "he would have exercised his appraisal rights and received greater value for his shares through an appraisal action." *Id.* at 58-59. But the Complaint contains no such allegation.[4]

*Class Standing.* Plaintiffs' failure to plead a viable theory of loss causation as to shareholders who "sold" into the merger may be a product of their lack of class standing to assert such claims. To avoid dismissal at the motion to dismiss stage, a putative class plaintiff must "plausibly allege[]" that the conduct that caused his injury "implicates the same set of concerns as

---

[4] MS&Co. and MSAL join in Sina's arguments that the Complaint fails to plead (a) loss causation as to the open-market sellers and (b) facts supporting its invocation of the *Affiliated Ute* (or the *Basic*) presumption of reliance.

the conduct alleged to have caused injury to [the] other members of the putative class by the same defendants." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014). That standard is not met when, as here, the alleged injury to other putative class members "has the potential to be very different—and could turn on very different proof." *Id.* at 162-63.

As alleged in the Complaint, the dates and prices of their sales indicate that none of the Plaintiffs "sold" into the merger on March 22, 2021 at the $43.30 merger price. ¶28; *see* ECF Nos. 36-1, 41-3. Although open-market sellers may plead loss causation if they can plausibly allege that they sold their shares at fraudulently depressed prices, shareholders that "sold" into the merger have fewer loss causation "theories available to them," and must plead and prove that they were induced to forgo a higher price that they would have received in an appraisal proceeding. *In re Shanda*, 128 F.4th at 57-59 & n.20. Here, as in *Policemen's Annuity & Benefits Fund*, Plaintiffs lack class standing as to those who "sold" into the merger because, to prevail on those claims, they would have to "augment the evidence that they would otherwise rely upon to prove their own claims." 775 F.3d at 163; *see also Curtis v. Aetna Life Ins. Co.*, 648 F. Supp. 3d 358, 371 (D. Conn. 2023) (no class standing where proof of individual injury would not demonstrate injury to other class members).

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice and grant such other and further relief as the Court may consider appropriate.

Dated: May 15, 2026

Respectfully submitted,

/s/ *Andrew Rhys Davies*
WILMER CUTLER PICKERING
HALE AND DORR LLP
Andrew Rhys Davies
Daniel F. Schubert
Ross E. Firsenbaum
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 295-6475
Andrew.Davies@wilmerhale.com
Daniel.Schubert@wilmerhale.com
Ross.Firsenbaum@wilmerhale.com

*Counsel for Defendants Morgan Stanley & Co.*
*LLC and Morgan Stanley Asia Limited*