UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SINA CORPORATION SECURITIES LITIGATION | Case No. 1:25-cv-07820-CM<br>**Oral Argument Requested** |

**DEFENDANT SINA CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Sina Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. PLAINTIFFS' CLAIMS ARE TIME-BARRED .......... 1

II. PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISREPRESENTATIONS .......... 3

A. There Was No Material Misrepresentation Regarding Sina's Valuation .......... 3

B. There Was No Material Misrepresentation Regarding the Merger Process .......... 4

III. PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER .......... 6

IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .......... 8

V. PLAINTIFFS DO NOT ADEQUATELY PLEAD RELIANCE FOR TENDERERS .......... 10

VI. SCHEME LIABILITY IS NOT ADEQUATELY PLED .......... 10

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

Page

### CASES

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) .......... 9

*Arco Capital Corps. v. Deutsche Bank AG*,
949 F. Supp. 2d 532 (S.D.N.Y. 2013) .......... 3

*Altimeo Asset Management v. Qihoo 360 Technology Co.*,
663 F. Supp. 3d 334 (S.D.N.Y. 2023) .......... 7, 10

*Berger v. Apple REIT Ten, Inc.*,
563 F. App'x 81 (2d Cir. 2014) .......... 4

*Bettis v. Aixtron SE*,
No. 16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) .......... 5

*Curry Management Corp. v. JPMorgan Chase Bank, N.A.*,
643 F. Supp. 3d 421 (S.D.N.Y. 2022) .......... 5, 6, 7, 10

*Employees' Retirement System of Government of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015) .......... 8

*Erickson v. Jernigan Capital, Inc.*,
No. 1:20-cv-9575 (MKV), 2022 WL 3028627 (S.D.N.Y. Aug. 1, 2022) .......... 9

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
639 F. App'x 664 (2d Cir. 2016) .......... 2

*Gray v. Wesco Aircraft Holdings, Inc.*,
847 F. App'x 35 (2d Cir. 2021) .......... 8

*Greco v. Qudian Inc.*,
No. 1:20-cv-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sep. 13, 2022) .......... 7

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) .......... 7

*Kleinman v. Elan Corp., plc*,
706 F.3d 145 (2d Cir. 2013) .......... 4

*Lau v. Opera Ltd.*,
527 F. Supp. 3d 537 (S.D.N.Y. 2021) .......... 4

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................4

*In re MCI Worldcom, Inc. Securities Litigation*,
93 F. Supp. 2d 276 (E.D.N.Y. 2000) ........................................................................7

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970) ........................................................................................9

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ........................................................................................8

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015) ........................................................................................5, 6

*In re Shanda Games Ltd. Securities Litigation*,
128 F.4th 26 (2d Cir. 2025), *cert. denied sub nom. Shanda Games Ltd. v. Monk*,
146 S. Ct. 366 (2025) ........................................................................4, 7, 8, 9, 10

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ........................................................................................6

*Wilson v. Great American Industries, Inc.*,
979 F.2d 924 (2d Cir. 1992) ........................................................................................9

*Yuson v. Warner Bros. Discovery, Inc.*,
No. 24 Civ. 9027 (KPF), 2026 WL 861669 (S.D.N.Y. Mar. 30, 2026) .............................3

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief (ECF No. 92, "Opposition" or "Opp.")[1] confirms that this action is an untimely and improper attempt to transform a shareholder appraisal suit—one Plaintiffs could have joined—into a federal securities class action. The Opposition does not meaningfully address the Motion's multiple independent grounds for dismissal. Instead, Plaintiffs offer their subjective opinion about what should have been disclosed in the Merger Proxy materials and mischaracterize the public documents on which they rely. For example, Plaintiffs repeatedly assert that Sina never mentioned the TuSimple investment in any SEC filing (Opp. at 1), but Sina disclosed it during an August 19, 2019 earnings call and then again in its 2019 20-F (Mot. at 9 n.7). Plaintiffs likewise claim that the Cayman Action first revealed that Chao and B. Zhang sat on TuSimple's board even though TuSimple's publicly filed IPO materials disclosed that information over four years earlier. Plaintiffs' obfuscations cannot cloak the obvious: their desire for a higher going-private price does not state a securities fraud claim, especially where Sina took robust steps to protect the integrity of the Merger and Minority Shareholders' interests. The AC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs had, or should have had, the necessary information to plead their claims by April 16, 2021. (Mot. at 11-13.) By that date, it had become publicly known that: (1) TuSimple completed its IPO at a $8.5 billion valuation; (2) Sina had an interest in TuSimple; (3) the Buyer Group disclosed its voting power, intent to vote for the Merger, and refusal to vote in favor of a third-party sale; (4) Morgan Stanley & Co. LLC underwrote TuSimple's IPO and MS Asia advised the Special Committee; and (5) the Merger was not subject to a MOTM condition. (*Id.* at 11-12 n.13.) Thus, this action is untimely under Section 10(b)'s two-year limitations period. (*Id.*)

Plaintiffs do not meaningfully dispute this, but claim that it was not until additional facts were disclosed in the "Caymen [sic] Action in February and March 2025, that Plaintiffs . . . could

[1] "Motion" or "Mot." refer to Sina's Motion to Dismiss (ECF No. 87). Capitalized terms used herein and not defined shall have the same meaning as in the Motion. Citations are omitted unless otherwise indicated.

have possibly uncovered information about Defendants' knowledge or intent to satisfy the rigorous PSLRA pleading standards for fraud." (Opp. at 13.) But the information Plaintiffs cite—such as Chao and B. Zhang's TuSimple board membership or TuSimple's projected IPO valuation—is corroborative only. The core factual allegations underpinning Plaintiffs' theory of fraud were publicly available by April 16, 2021. This is fatal. *See, e.g.*, *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 F. App'x 664, 666-68 (2d Cir. 2016).[2]

This is confirmed by the Original Complaint, which alleges the same core theory of fraud as the AC, based on facts disclosed in TuSimple's final prospectus. (Mot. at 13.) Plaintiffs argue that the Original Complaint's allegations were made after, and based on, the February and March 2025 Cayman proceedings. (Opp. at 14.) That misses the point: the allegations that supposedly revealed the fraud—TuSimple's Series E valuation (OC ¶ 42); TuSimple's IPO valuation (*id.* ¶¶ 40-41); the progress of the IPO at the time of the Merger (*id.* ¶ 43); and TuSimple's December 2020 and January 2021 projections (*id.* ¶¶ 44-45)—were in TuSimple's final IPO prospectus. (Mot. at 13; *see also* Ex. G at 95-96, 149, 153-54; AC ¶ 188.) If Plaintiffs deem these allegations sufficient now under FRCP 11, they could have and should have asserted them by April 16, 2023.

Even assuming these facts were necessary to plead their claims (and they were not), each was publicly disclosed by April 16, 2021:

- Plaintiffs' claim that the Cayman Action first revealed Chao and B. Zhang sat on TuSimple's Board (Opp. at 13) is refuted by TuSimple's Prospectus, which identifies both individuals as directors. (Ex. G at 131-36, 153.)

- Plaintiffs' claim that TuSimple "was being valued" up to $7 billion in June 2020 (Opp. at 13-14) is based on public reporting in August 2020[3] that TuSimple was targeting an IPO with a valuation of up to $7 billion. (AC ¶¶ 188, 192; *see* Jill Shen, *Robotruck Firm TuSimple Seeks IPO Valuation of Up to $7 Billion*, TechNode (Aug. 17, 2020)[4].) Thus,

[2] Plaintiffs' attempt to distinguish Sina's authorities as cases where the "underlying misconduct was disclosed" (Opp. at 14 n.2) misreads them: each holds that the clock runs once a claim's factual substance is publicly available.

[3] If Plaintiffs argue there is a meaningful difference between June and August 2020, they are wrong. Both fall before the Proxy's filing, Merger vote, and TuSimple's IPO. (Opp. at 11-12.)

[4] technode.com/2020/08/17/robotruck-firm-tusimple-seeks-ipo-valuation-of-up-to-7-billion.

that information was public when reported in August 2020.

- Sina's November 8, 2017 Form 6-K refutes Plaintiffs' contention that the Cayman Action first revealed that Chao could not vote his Preference Shares for personal benefit (Opp. at 13): it disclosed the New Wave issuance of 7,150 Class A Preference Shares, raising Chao's voting power with every condition attached—none of which restricted how the shares could be voted. (AC ¶¶ 17, 95; Ex. J.)

- Plaintiffs assert that the Cayman Action revealed the alleged scheme "to prevent price discovery" (Opp. at 14), but all the supporting facts for that argument appear in Sina's pre-2021 SEC filings: the October 13, 2020 Schedule 13E-3 and Preliminary Proxy disclosed the Buyer Group's 61.2% voting power, its refusal to sell to a third party or support an alternative transaction, and the absence of an MOTM condition. (AC ¶¶ 233, 239.)[5]

## II. PLAINTIFFS FAIL TO PLEAD ACTIONABLE MISREPRESENTATIONS

### A. There Was No Material Misrepresentation Regarding Sina's Valuation

Starting with TuSimple's valuation, the Opposition claims that "Sina did not truly believe that the value of TuSimple was no higher than" or "capped at" the $288 million top end of MS Asia's Fairness Opinion valuation range. (Opp. at 16, 17.) But there was no representation made (by anyone) that TuSimple's value was "capped."[6] *See Yuson v. Warner Bros. Discovery, Inc.*, 2026 WL 861669, at *12 (S.D.N.Y. Mar. 30, 2026) (dismissing securities fraud claims where plaintiffs' allegations "fail[ed] to engage with the actual statements Defendants made").[7] Rather, the Proxy disclosed only MS Asia's valuation range of Sina's stake in TuSimple in its Fairness

[5] Plaintiffs argue that Sina failed to address whether Plaintiffs had facts sufficient to allege scienter by April 16, 2021. (Opp. at 13.) Not so. The core allegations Plaintiffs pled to support scienter here—though insufficient (Mot. at 18-21)—are the same facts Plaintiffs rely on to allege falsity. (*Id.* at 11-13.) There is no dispute that Chao's role as a Sina insider and TuSimple director, his voting control, the MOTM waiver, and the Buyer Group's refusal to support alternative transactions were publicly disclosed before April 16, 2021, without need for Cayman testimony. *Arco Cap. Corps. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 545-46 (S.D.N.Y. 2013) (10(b) claims time-barred where scienter allegations showed plaintiffs "could have discovered" "facts constituting the violation" over two years before complaint filed).

[6] Sina adopts the arguments in the MS Brief and the MS Reply Brief by reference regarding Plaintiffs' allegations that MS Asia's statements in its Fairness Opinion are misleading, and does not separately address those statements here. (AC ¶¶ 225-28, 241-42.)

[7] Plaintiffs also point to conclusory allegations that Chao and B. Zhang knew about the timing of TuSimple's IPO and its projected IPO valuation. That is irrelevant, as neither is alleged to have played any role in the preparation or evaluation of the Proxy's TuSimple valuation. (*See also* Ex. 1 at 74-76 (dissenters' case that Chao "must have known" and understood the "components of TuSimple's IPO and its timing has not been made out").)

Opinion—between the $186 million book value and $288 million, the value of Sina's stake in TuSimple based on TuSimple's September 2019 Series D round valuation less a 30% liquidity discount. (Ex. D at 32.) Plaintiffs concede that they do not allege this range was false or inaccurate. (*Id.* at 11; AC ¶¶ 13, 225.) Their preoccupation with a higher valuation is only subjective disagreement with the disclosed methodology. *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 44 (2d Cir. 2025) (mere disagreement with choice among "accepted accounting methods" not actionable).

Plaintiffs' arguments concerning the HoldCo Discount fail for the same reason. They do not argue (or allege) that the reported HoldCo Discount was not actually used or that the rationale for applying it was false. (Opp. at 16.) Their assertions that Sina knew the HoldCo Discount "was a result of their own poor corporate governance" and would "disappear upon completion of the Merger" (*id*) is, again, a subjective disagreement with the disclosed methodology, not a basis to call the disclosure false or misleading.[8] To the extent Plaintiffs argue that Sina's accurate disclosures were misleading because they omitted Plaintiffs' preferred subjective information, that fails as well. Sina's historical HoldCo Discount was well-known. (AC ¶¶ 60-63, 65; Ex. F.) *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 553 (S.D.N.Y. 2021) ("Alleged misstatements are not material where the truth was fully disclosed or concerned a matter of public knowledge.").[9]

**B. There Was No Material Misrepresentation Regarding the Merger Process**

Plaintiffs' process-based challenges also fail. First, the Opposition fails to identify any

---

[8] Plaintiffs also assert that the "Caymen [sic] Court held that the application of the HoldCo Discount was improper." (Opp. at 16.) That is irrelevant to whether a disclosure that the HoldCo Discount was used, and the rationale for using it, was false or misleading at the time. In any event, the Cayman court—focusing solely on determining the value of dissenters' shares under Cayman law—concluded that the HoldCo Discount was "an observable phenomenon," though it would not incorporate this discount in its valuation calculation. (Ex. 1 at 217.)

[9] Plaintiffs' cases are not to the contrary. *Berger v. Apple REIT Ten, Inc.*, 563 F. App'x 81, 83 (2d Cir. 2014) (holding plaintiffs did not allege any material misstatements or omissions); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) ("The question remains whether a reasonable investor would have viewed the nondisclosed information as having significantly altered the total mix of information made available."); *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 154 (2d Cir. 2013) (affirming dismissal; that alleged omission "may be relevant or of interest" "alone does not necessitate its disclosure").

misleading omission regarding the Buyer Group's voting power or intent to oppose any alternative transaction. (Opp. at 18-19.) Plaintiffs repeat that the Proxy did not disclose that "Chao was prohibited from voting his Preference Shares" in favor of the Merger (*id.* at 18) but offer no support for such prohibition. The question is not whether Chao had fiduciary duties generally or with voting; it is whether he was prohibited from voting his shares in favor of *this* transaction. That is a legal question, not a factual one, and Plaintiffs fail to establish any such legal restriction. Plaintiffs abandon their inapposite sources in the AC (*see* Mot. at 15-16) and instead cite the Cayman court's observation that Chao, as a Sina director, has fiduciary duties like all directors and cannot benefit from breaching them (Opp. at 19). The Cayman court held, however, that the market would know that Chao had these fiduciary obligations. (Ex. 1 at 231.) And, critically, ***Plaintiffs omit that the court went on to hold that Chao did not violate such duties***. (*Id.*)

Second, the Opposition does not attempt to defend the AC's claim that Sina failed to disclose that the Merger process or the "purported size" of the Buyer Group's voting power "prevented any market check or price discovery." (AC ¶¶ 231-40.) *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) (McMahon, J.) (dismissing claims that plaintiffs failed to address in opposition as "deemed[] concede[d]"). These facts were disclosed in the Proxy and publicly reported. (*See* Mot. at 16-17.) *Bettis v. Aixtron SE*, 2016 WL 7468194, at *10 (S.D.N.Y. Dec. 20, 2016) ("no duty to disclose information that is 'equally available, widely reported, or so basic that any investor could be expected to know it'").

Third, the Opposition claims that the Proxy's statements that the Special Committee and Board "belie[ved]" that the Merger was "more favorable" to the Minority Shareholders "than any other alternative reasonably available," and that the Merger was "fair to, and in the best interests of" Sina and the Minority Shareholders, were false because "Sina did not believe" these assertions. (Opp. at 15.) Plaintiffs point to no facts in the AC indicating that the Board or Special Committee did not genuinely believe the Merger was fair when the recommendation was made, or that the Fairness Opinion lacked a reasonable basis or omitted information that rendered it misleading. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015);

*Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016). The Proxy disclosed the factors supporting the judgments made (Ex. C at 25-29, F-2–F-4), and the alleged omissions (Opp. at 17) are nonactionable complaints about subjective choices.[10]

Fourth, the Opposition argues that the Special Committee's and Board's statements that sufficient procedural safeguards existed were false because "Sina Defendants took numerous actions to prevent any price discovery process." (Opp. at 19; Ex. C at 27.) Again, this alleged misstatement is an opinion, and Plaintiffs do not (and cannot) point to any concrete factual allegation showing that the Special Committee did not genuinely hold this belief. *Omnicare*, 575 U.S. at 186. Nor do Plaintiffs dispute that procedural safeguards ***were*** in place: the Special Committee was composed of three independent directors (AC ¶¶ 147-48), retained independent outside advisors (*id.* ¶ 152), and had authority to negotiate or reject the Merger (*id.* ¶ 235).[11]

The Opposition's remaining arguments are a makeweight. Plaintiffs' objections to the "go shop" process and MOTM provision (Opp. at 19) are merely opinions about what the process ***should have been***, not a basis for alleging securities fraud. Plaintiffs' accusations that the Special Committee sought to "reduce" Sina's valuation are conclusory. The Q2 Weibo results were incorporated into the Fairness Opinion's analysis. (Ex. D at 9.)

## III. PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs' Opposition confirms that they fail to plead any particularized facts supporting a motive to defraud for any individual whose intent can be imputed to Sina. (Opp. at 19.) Plaintiffs do not refute, and thus concede, that none of the Special Committee members had any economic interest in the Merger or stood to gain any concrete personal benefit. *Curry Mgmt.*, 643 F. Supp.

---

10 Plaintiffs' cited cases either go Defendants way because they involve opinions that were held to be nonactionable or are inapposite because they concerned opinions that were actionable due to particularized factual allegations showing contrary facts available to the speaker, which are not present here. (Opp. at 17-18 n.4.)

11 The Opposition cites the Cayman opinion to argue that the processes were not "effective in producing price discovery" (Opp. at 19), but the Cayman court said there was "no reason to doubt" Special Committee members had the "genuinely held view" that "the merger price represented a fair price." (Ex. 1 at 94.) It "reject[ed]" that the Special Committee "were not independent and objective and suborned the interests" of Minority Shareholders to Chao. (*Id.*)

3d at 422. Plaintiffs acknowledge that the Special Committee's conduct—like retaining sophisticated independent advisors (AC ¶¶ 39, 152) and negotiating and securing a price increase (*id.* ¶¶ 136, 215, 235)—was inconsistent with fraud.

Instead, Plaintiffs fall back on their motive allegations for the Buyer Group. (Opp. at 20-21.) In doing so, Plaintiffs do not respond to Sina's argument that the Buyer Group's state of mind cannot be attributed to the Company because the Buyer Group was not acting on Sina's behalf in connection with the Merger. (Mot. at 19.) Plaintiffs have thus conceded the point. *Curry Mgmt.*, 643 F. Supp. 3d at 422. In any event, Plaintiffs' reliance on the Buyer Group's "economic self-interest" (Opp. at 21) is unavailing as "the desire to achieve the most lucrative acquisition" is insufficient to plead scienter. *Kalnit v. Eichler*, 264 F.3d 131, 141 (2d Cir. 2001).[12]

Even if Plaintiffs' allegations established motive by the Buyer Group (which they do not), the adverse interest exception still would preclude such intent from being imputed to Sina. Plaintiffs' authorities are not to the contrary. Courts impute the scienter of corporate officers to a company "based on agency principles," which apply when officers "were acting within the scope of their apparent authority." *Shanda Games*, 128 F.4th at 53. The Buyer Group disclaimed such purported authority (Mot. at 21), and Sina's disclosures stated that the Buyer Group's interests diverged from those of other shareholders (AC ¶ 140).

Plaintiffs' recklessness arguments—which must be "correspondingly greater" absent motive and opportunity—fare no better. *Kalnit*, 264 F.3d at 142. Plaintiffs claim that "***Sina Defendants*** had access to all the undisclosed facts" (Opp. at 22)—again impermissibly conflating the scienter of the Buyer Group to Sina as a whole. *Greco v. Qudian Inc.*, 2022 WL 4226022, at *25 (S.D.N.Y. Sep. 13, 2022) ("plaintiffs must plead circumstances providing a factual basis for

---

12 Plaintiffs' cases all involved knowingly false statements that were also adequately alleged. *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 284 (E.D.N.Y. 2000) (scienter alleged where acquirer "may have been motivated by potential economic gains to ***falsely*** deny merger talks" (emphasis added)); *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 663 F. Supp. 3d 334, 377 n.24 (S.D.N.Y. 2023) (scienter based on CEO's "knowledge" of "***false*** denials" (emphasis added)). *Shanda Games* did not involve "precisely the same circumstances" (Opp. at 21); it concerned the false manipulation of internal projections and the failure of a buyer group to disclose its contrary interests, neither of which is alleged here.

scienter for each defendant"). Even if Plaintiffs' unparticularized allegations established access to information by the Special Committee members (which they do not), Plaintiffs still do not plead "known facts revealing falsity" required by their own authorities.[13] (Opp. at 21.) While the Opposition purports to identify five "undisclosed facts" (*id.* at 22), none contains either (1) known facts contradicting the allegedly misleading statements in the Proxy or (2) any duty to disclose the allegedly omitted information, as explained above (*supra* § II).

## IV. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

*Sellers.* Plaintiffs first contend that Sellers may allege loss causation based on lost appraisal rights. (Opp. at 23.) But Sellers sold before the Merger closed and thus had no appraisal right to forfeit. Plaintiffs identify no authority extending the lost-appraisal-rights theory to shareholders who sold before the transaction that would have triggered the right to dissent.[14] Plaintiffs also blithely assert that the Sellers were damaged by selling securities in a merger at artificially deflated prices. (*Id.* at 24.) That theory presumes that they adequately alleged that Sellers sold at artificially deflated prices. But Plaintiffs identify no corrective disclosure during the Class Period or corresponding price reaction demonstrating the dissipation of any price deflation. (Mot. at 21-22.) Nor do they identify a nonspeculative causal link between a specific misrepresentation and a quantified loss for Sellers (Opp. at 25); speculation that the market price would have been higher with their preferred disclosures is insufficient. *Gray v. Wesco Aircraft Holdings, Inc.*, 847 F. App'x 35, 37 (2d Cir. 2021).[15] (Mot. at 21-23.)

*Tenderers.* Plaintiffs' appraisal-rights theory for Tenderers (Opp. at 22-23) fails because

---

[13] *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (recklessness claims typically sufficient where plaintiffs "specifically alleged defendants' knowledge of facts or access to information contradicting their public statements"); *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306-09 (2d Cir. 2015) (scienter alleged where confidential witnesses specifically detailed defendants' efforts to deceive investors).

[14] Plaintiffs misleadingly argue that *Shanda Games* implied that the loss-of-appraisal-rights discussion applied to Sellers. Not so. The court explicitly disclaimed any holding as to Sellers. *Shanda Games*, 128 F.4th at 58 n.20.

[15] Plaintiffs allege even less than what *Gray* deemed speculative. (*Cf.* Opp. at 25.) They identify no facts showing that a higher valuation was sufficiently likely, nor do they allege that the only real alternative—remaining public—would have created more value than the Merger.

the AC lacks the allegations that made *Shanda Games*' loss causation showing viable. Plaintiffs' assertion that any allegation of a "fair value" shortfall is automatically "equivalent to invoking . . . appraisal rights" (*Id.* at 23) overreads *Shanda Games*. There, the plaintiff specifically alleged that he "would have exercised his appraisal rights" had the truth been disclosed, which sufficed to plead loss causation because it showed the proxies "concealed the higher value of [the company], foreseeably resulting in the forfeiture of [plaintiff's] appraisal rights." *Shanda Games*, 128 F.4th at 58. The AC contains no equivalent allegation that Plaintiffs gave up their appraisal rights; it alleges only that Defendants' conduct caused putative class members "to sell their shares at a depressed price," which caused them to "suffer[] economic loss."[16] (AC ¶ 256.)

Plaintiffs' separate fair-value theory for Tenderers (Opp. at 24) fares no better. <u>First</u>, the same five items Plaintiffs cite as "abundant support" for a higher fair value, addressed above as to Sellers, fail here for the identical reasons: none connects the alleged misrepresentations to a reduction in the Merger price. <u>Second</u>, the specific propositions Plaintiffs draw from their cited cases address how damages are ***measured*** once causation is independently shown—not how to plead the causal link between a misstatement and loss. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970) (remedy of assessing "fairness of the terms"); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972) ("correct measure of damages"); *Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 933 (2d Cir. 1992) (damages measured by additional shares owed under fair exchange ratio in stock-for-stock merger).[17] A damages formula cannot substitute for causation. *Erickson* is inapposite because its proxy concealed a potential acquirer's interest, making a lower share price a "foreseeable consequence" of the omission, *Erickson v. Jernigan Cap., Inc.*, 2022 WL 3028627, at *4 (S.D.N.Y. Aug. 1, 2022), whereas TuSimple's potential IPO valuation was

---

[16] *Shanda Games* itself distinguished another case by noting that "plaintiffs there did *not* claim, as [plaintiff] does here, that they lost an appraisal remedy by virtue of the defendants' materially misleading proxy statements." 128 F.4th at 56.

[17] Plaintiffs' assertion that a fair-value damages measure applies for Sellers is wrong. (Opp. at 23.) *Wilson*, *Mills*, and *Erickson* measure the adequacy of merger consideration actually exchanged in a merger, and Sellers, who sold their shares on the open market before the Merger closed, never received merger consideration at all. *Affiliated Ute*'s damages formula involves a sale, but it is a damages calculation, not a substitute for pleading causation. 406 U.S. at 155.

publicly reported before the Proxy was issued.

Moreover, no theory of loss for Tenderers survives because the Merger price was fixed by September 28, 2020, two weeks before the Proxy was filed. The price Tenderers received was thus set before the challenged statements existed, so no disclosure could have caused a lower price.

## V. PLAINTIFFS DO NOT ADEQUATELY PLEAD RELIANCE FOR TENDERERS

Plaintiffs do not meaningfully respond to Sina's argument that neither the *Affiliated Ute* nor the *Basic* presumption of reliance applies; they therefore must plead actual, individualized reliance, which they fail to do. (Opp. at 22.) Relying on *Qihoo*, Plaintiffs assert that it is enough that the Buyer Group needed some Minority Shareholders to attain the two-thirds required for the Merger. (*Id.*) But *Qihoo* did not hold that a bare allegation of required tenderer votes is sufficient to plead reliance. The court only assumed *arguendo*, for its loss causation analysis, that the complaint had plausibly alleged reliance by the tenderers under the theory that "votes from at least some of these shareholders were required for approval of the Merger; that these shareholders would have voted down the Merger . . . ; and that the exchange of shares . . . would not have occurred." *Qihoo*, 663 F. Supp. 3d at 365. It did so over its own skepticism, since the buyer group needed only a few minority shareholder votes. *Id.* at 365-66. Plaintiffs here allege even less: they cite only the Buyer Group's disclosed 61.2% voting power, without alleging that minority shareholders would have voted "no," let alone in the overwhelming numbers the theory requires.[18]

## VI. SCHEME LIABILITY IS NOT ADEQUATELY PLED

Plaintiffs do not address Sina's arguments regarding their inadequate pleading of scheme liability (Mot. at 25), and have thus conceded this point. *Curry Mgmt.*, 643 F. Supp. 3d at 422.

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.

---

[18] *Shanda Games* likewise does not help Plaintiffs' Tenderer reliance theory. *Shanda Games*' complaint invoked the presumption of reliance for "the decision to tender shares . . . rather than seeking appraisal" (Second Am. Compl. ¶ 279, *Shanda Games*, No. 1:18-CV-02463 (S.D.N.Y. Oct. 23, 2020), ECF No. 72), whereas the AC's reliance allegations never mention an appraisal. Instead, Plaintiffs only describe an open-market sale. (AC ¶¶ 257-59, 267.)

Dated: New York, New York
August 28, 2026

Respectfully submitted,

*/s/ Michael C. Griffin*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendant Sina Corporation*